COURTNEY HUDSON GOODSON, Associate Justice
Appellant Ronnie R. Collins appeals from his conviction for capital murder, for which he was sentenced to life imprisonment. For reversal, Collins argues that the circuit court abused its discretion in not allowing him to impeach a prosecution witness's credibility with extrinsic evidence of her mental disorder. We affirm.
On June 17, 2015, Collins was charged with the premeditated and deliberated capital murder of Jonathan Brown. Collins was also charged with employing a firearm during the commission of the offense. The State filed an amended information on October 17, 2017, asserting that Collins was a habitual offender with four or more prior felonies. Although Collins does not challenge the sufficiency of the evidence, a brief recitation of the facts and the evidence presented at the October 2017 jury trial is helpful to understand the issue presented on appeal.
In the early morning hours of May 8, 2015, Brown was shot and killed inside Larry Bailey's residence. Bailey testified that he often let homeless persons stay at his home, and he indicated that on the night of the murder, there were five others sleeping there-Brown, who was sleeping in the living room on the floor; Preston Hopkins, who was sleeping on the living-room couch; a female identified as "Toledo," who was sleeping in the bedroom with Bailey; Collins, who was sleeping on a pallet in the kitchen area; and Collins's girlfriend, Lakeesha Jackson, who was sleeping next to Collins. Bailey stated that he heard Brown and Collins, whom Bailey knew as "N.O.," arguing that morning and that he got up and was standing at the bedroom doorway looking into the living room when he saw Collins shoot Brown three times with a black pistol. According to Bailey, Collins and the other individuals then left the house, and Bailey went across the street to use his neighbor's phone to call 911. Bailey indicated that while he was across the street on his neighbor's front porch, he witnessed Collins go back inside the house, heard a fourth gunshot, and then saw Collins exit the house and walk down the alley. Bailey testified that he did not see Collins again after the shooting.
Lakeesha Jackson testified that she had been dating Collins for approximately one month at the time of the shooting. She stated that on May 8, 2015, she arrived at Bailey's home around 3:00 a.m. to find Collins asleep on his pallet in the kitchen with a black .45 semiautomatic pistol on his chest. Jackson put the gun on the floor, laid down beside Collins, and went to sleep. She testified that a couple of hours later, Brown was getting ready for work and asked Collins what time it was. According to Jackson, Collins and Brown began *471 arguing. Collins walked into the living room, and Jackson then heard multiple gunshots. Jackson stated that she did not actually see Collins shoot Brown. She indicated that everyone left the house after the shooting, including Collins, although she remembered seeing Collins return to the house and hearing one more gunshot.
The medical examiner testified that Brown had been shot twice in his right arm, once in his right thigh, and once in his chest and that he died from multiple gunshot wounds. Jennifer Floyd, the firearm and tool-mark examiner, indicated that all four of the bullets and all of the cartridge cases were .45 caliber and were fired from the same gun, which was never recovered. Megan Buchert, the crime-scene specialist, further testified that additional rounds of .45-caliber bullets were found in a black bag near the pallet where Collins had been sleeping.
The jury found Collins guilty of the premeditated and deliberated capital murder of Brown and of using a firearm during the commission of the offense. Because the State waived the death penalty, Collins was sentenced by the circuit court to life in prison. He also agreed to have the circuit court sentence him on the firearm enhancement, for which he received a sentence of zero years' imprisonment. The sentencing order was entered on November 17, 2017, and an amended sentencing order was filed on December 4, 2017. Collins timely appealed from his conviction and sentence.
In his sole point on appeal, Collins contends that the circuit court abused its discretion by not allowing him to impeach Lakeesha Jackson's credibility with extrinsic evidence that she suffered from a mental disorder, specifically, schizophrenia. Prior to trial, Collins filed a motion requesting that the circuit court issue an order directing the release of Jackson's mental-health records from July 1, 2014, to September 20, 2017. Collins argued that evidence of Jackson's mental state, both currently and at the time of the alleged offense in 2015, was relevant due to the nature of her anticipated testimony at trial. The State argued that Jackson's patient-psychotherapist privilege under Arkansas Rule of Evidence 503 (2017) barred discovery of these records. The circuit court denied Collins's motion.
Prior to the start of trial, defense counsel indicated that it had obtained certified circuit court documents from several unrelated cases involving Jackson in 2011 and 2016 that contained information pertaining to her schizophrenia. The State asserted that there was no evidence that Jackson was suffering from a psychotic disorder either currently or at the time of the murder and asked that the circuit court exclude this evidence as irrelevant. Collins responded that the court records in his possession indicated that Jackson's mental health was an ongoing issue, and he requested that he be allowed to use these documents to impeach her on cross-examination if the matter was brought up during her direct examination. The circuit court reserved ruling on this issue until Jackson testified.
During Jackson's direct-examination testimony, she indicated that she had spent time at a certain psychiatric facility in connection with a prior criminal charge. Collins renewed his request to impeach Jackson's credibility with the court documents pertaining to her mental disorder, arguing that she had opened the door to admission of this evidence. The circuit court denied this request. Collins later proffered the relevant court records into the record.
Circuit courts have broad discretion on evidentiary issues, and we will not *472 reverse a circuit court's ruling on the admission of evidence in the absence of an abuse of discretion. Friar v. State , 2016 Ark. 245, 2016 WL 3346565. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. Hortenberry v. State , 2017 Ark. 261, 526 S.W.3d 840. Furthermore, we will not reverse unless the appellant demonstrates that he was prejudiced by the evidentiary ruling. Edison v. State , 2015 Ark. 376, 472 S.W.3d 474.
Collins argues that the circuit court erred in two ways by denying his request to utilize evidence of Jackson's mental disorder to impeach her testimony. First, he asserts that the court erred by not examining the mental-health records at issue before ruling on their admissibility. He cites United States v. Sasso , 59 F.3d 341 (2d Cir. 1995), which set forth three factors for a court to consider when assessing the probative value of a witness's mental-health records: (1) the nature of the psychological problem; (2) the temporal recency or remoteness of the history; and (3) whether the witness suffered from the problem at the time he or she observed the relevant events.
Collins did not make this particular argument to the circuit court or request that it examine the records prior to rendering its ruling, however. An appellant is bound by the scope and nature of the arguments made at trial and may not change or enlarge those grounds on appeal. Stewart v. State , 2012 Ark. 349, 423 S.W.3d 69. Because Collins's argument is raised for the first time on appeal, it is not preserved for our review.
Collins next contends that the circuit court erred by erroneously interpreting our common law of evidence governing impeachment of the credibility of a witness afflicted with mental illness. As he did below, he cites to Mell v. State , 133 Ark. 197, 202 S.W. 33 (1918), wherein this court held that evidence of a witness's insane delusions was admissible in order to challenge her credibility. See also Mangrum v. State , 227 Ark. 381, 299 S.W.2d 80 (1957) (stating that insanity or mental delusions of a witness may be shown by the testimony of another witness).
The State responds by asserting that Collins's right to cross-examine Jackson was limited by the psychotherapist-patient privilege in Arkansas Rule of Evidence 503. This rule provides that a "patient has a privilege to refuse to disclose and to prevent any other person from disclosing his medical records or confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition[.]" Ark. R. Evid. 503(b). Although this privilege is waived if a party in a civil or criminal proceeding brings his mental or physical condition into issue, a witness in a criminal case does not waive his privilege by testifying because the State, not the witness, is the party in a criminal proceeding. Johnson v. State , 342 Ark. 186, 27 S.W.3d 405 (2000).
Collins does not address in his brief whether Rule 503 would have applied to prevent admission of any of the proffered documents at issue. Even assuming, however, that Rule 503 did not apply and that the circuit court erred by refusing to allow this evidence to impeach Jackson's credibility, we agree with the State's alternative argument that any error would be harmless under the facts in this case.
We may declare an evidentiary error harmless if the evidence of guilt is overwhelming and the error is slight. Johnston v. State , 2014 Ark. 110, 431 S.W.3d 895. Here, the error, if any, was *473 slight, as Jackson's credibility was impeached by other evidence such as the inconsistencies in her prior statement to police and her prior criminal history. Thus, any prejudice to Collins from the exclusion of evidence about Jackson's mental illness was minimal. Buford v. State , 368 Ark. 87, 91, 243 S.W.3d 300, 303 (2006) ("To determine if the error is slight, we can look to see if the defendant was prejudiced."). Furthermore, there was overwhelming evidence of Collins's guilt through Bailey's testimony and other corroborating physical evidence. While Jackson denied seeing Collins shoot Brown, Bailey was an eyewitness to the crime. Bailey testified that he witnessed Collins shoot Brown three times, leave the home, and then return to shoot Brown a fourth time. Bailey's testimony was corroborated by the location of the spent cartridges found inside the home. In addition, while Jackson's testimony placed Collins with a pistol right before the murder, there was also other evidence admitted that a bag found near where Collins was sleeping contained additional rounds of the same caliber ammunition that was used in the murder. Accordingly, even if the exclusion of the proffered records was erroneous, we conclude that it was harmless error. See Buford , supra (affirming based on harmless error because prejudice was minimal and there was independent eyewitness testimony of the crime).
Rule 4-3(i) Review
Because Collins received a life sentence, the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Collins in compliance with Arkansas Supreme Court Rule 4-3(i), and no prejudicial error has been found. We therefore affirm.
Affirmed.
Hart, J., dissents.
Josephine Linker Hart, Justice, dissenting.
I dissent. Mr. Collins's argument is compelling: the circuit court abused its discretion in denying his request to use extrinsic evidence that State's eyewitness Lakeesha Jackson had been diagnosed with schizophrenia for the purpose of impeaching the witness's credibility. He asserts that the circuit court abused its discretion in two ways: (1) by failing to even look at his proffered evidence-which necessarily means that the circuit court ruled without due consideration; and (2)by failing to properly apply mandatory authority that required it to admit the extrinsic evidence of Ms. Jackson's mental disease.
Regarding the latter point first, extrinsic evidence of a prosecution witness's mental health has long been held admissible under Arkansas law. Mell v. State , 133 Ark. 197, 200-01, 202 S.W. 33, 34 (1918). In Mell , this court specifically discussed the situation in which, as in the case before us, a prosecution witness was competent to testify, but circumstantial proof regarding the extent of his or her insanity was admissible to challenge the witness's credibility. Mell is directly on point. Accordingly, the circuit court was obligated to follow this precedent. The failure to follow binding precedent constitutes an abuse of discretion. An abuse of discretion is established when the circuit court erroneously interprets or incorrectly applies the law. McClanahan v. State , 2010 Ark. 39, 358 S.W.3d 900 ; Reeves v. State , 374 Ark. 415, 288 S.W.3d 577 (2008). Under this doctrine, we are obligated to decide a similar issue in a manner consistent with our prior decision. Williams v. State , 2019 Ark. 96, 571 S.W.3d 3.
The suggestion by the majority that the State's argument that this evidence was inadmissible under the psychotherapist-patient privilege found in *474 Rule 503 of the Arkansas Rules of Evidence needed to be addressed by Collins is simply wrong. First, it was not the basis for excluding the evidence asserted by the circuit court. Second, Rule 503 is not applicable to this situation because the record is clear that Ms. Jackson did not assert the privilege. Rule 503 explicitly states that this privilege may only be claimed by Ms. Jackson or her representative, subject to very few exceptions that are not applicable here. Rule 503 states in pertinent part:
(c) Who May Claim the Privilege. The privilege may be claimed by the patient, his guardian or conservator, or the personal representative of a deceased patient. The person who was the physician or psychotherapist at the time of the communication is presumed to have authority to claim the privilege but only on behalf of the patient.
(d) Exceptions.
(1) Proceedings for Hospitalization. There is no privilege under this rule for communications relevant to an issue in proceedings to hospitalize the patient for mental illness, if the psychotherapist in the course of diagnosis or treatment has determined that the patient is in need of hospitalization.
(2) Examination by Order of Court. If the court orders an examination of the physical, mental, or emotional condition of a patient, whether a party or a witness, communications made in the course thereof are not privileged under this rule with respect to the particular purpose for which the examination is ordered unless the court orders otherwise.
(3) Condition and Element of Claim or Defense.
A. There is no privilege under this rule as to medical records or communications relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which he or she relies upon the condition as an element of his or her claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his or her claim or defense.
B. Any informal, ex parte contact or communication with the patient's physician or psychotherapist is prohibited, unless the patient expressly consents. The patient shall not be required, by order of court or otherwise, to authorize any communication with the physician or psychotherapist other than (i) the furnishing of medical records, and (ii) communications in the context of formal discovery procedures.
The State's argument is not only unpersuasive, because it is completely lacking in factual or legal basis, it is arguably sanctionable.
Finally, the majority's contention under this rubric that the error was "harmless" rests on a misstatement and misapplication of the harmless-error doctrine. In Winfrey v. State , 293 Ark. 342, 738 S.W.2d 391 (1987), this court refused to find harmless a circuit court's erroneous decision to prohibit a criminal defendant from using on cross-examination the victims' prior-inconsistent statements. The Winfrey court stated that evidentiary rulings that impaired a criminal defendant's ability to cross-examine the victims implicated the defendant's rights under the Confrontation Clause. 293 Ark. at 343-44, 738 S.W.2d at 393-94 (citing Delaware v. Fensterer , 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) ; Pennsylvania v. Ritchie , 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) ; Davis v. Alaska , 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) ). Thus, to be harmless, the error must be harmless beyond a reasonable doubt. Id.
*475 The majority's reliance on Buford v. State , 368 Ark. 87, 91, 243 S.W.3d 300, 303 (2006), is therefore misplaced. Buford involved a circuit court's erroneous decision to allow an "expert" to opine as to whether a rape victim was telling the truth. The Buford court found that the error was harmless because there was "overwhelming" evidence; the victim provided "graphic details" of the rape, which were independently corroborated by three witnesses who observed the rape through a window; and the arresting officer testified that when the defendant was found with the victim in his vehicle, he gave a false name and falsely identified the victim as his nephew.
Obviously, the evidence in Buford was not intended for use in cross-examination, so the Confrontation Clause was not implicated. Accordingly, Buford is not on point. Furthermore, the evidence in this case is not overwhelming. Only Ms. Jackson's testimony put the actual murder weapon, a .45-caliber handgun, in Collins's hands. While the State introduced shell casings and bullets recovered from the victim, the gun was never found by police, and it was not introduced into evidence at trial. Ms. Jackson's testimony was also necessary to corroborate Bailey's testimony. Unlike the identical stories in Buford , Baily's testimony was contradicted in part by Lisa Burton. Thus, whether Collins was prejudiced or not, his conviction for capital murder proves that the State's witnesses were believed.
The harmless-error analysis put forward by the majority in the case before us is precisely the type of harmless-error analysis that this court rejected in Rogers v. State , 2018 Ark. 309, 558 S.W.3d 833 ( Rogers II ). In Rogers II , we granted rehearing and reversed Rogers v. State , 2018 Ark. 242, 550 S.W.3d 387 ( Rogers I ). As in the case before us, the majority in Rogers I relied on Buford .
Finally, regarding the first part of Collins's argument, the majority's creative use of a procedural bar is troubling. As with any evidentiary ruling that is challenged on appeal, it is reviewed under an abuse-of-discretion standard. Threadgill v. State , 347 Ark. 986, 993, 69 S.W.3d 423, 428 (2002). We have repeatedly stated that an abuse of discretion occurs when the ruling is improvident, thoughtless, or without due consideration. Id. Collins did not stray from his basic argument---that the circuit court abused its discretion by excluding his proffered evidence---because his use of United States v. Sasso , 59 F.3d 341 (2d Cir. 1995), was merely as an example of what another court considers to be due consideration when deciding whether to admit into evidence a witness's mental-health records. In the case before us, the record indicates that the circuit court made no effort to examine the content of the documents that Collins proffered. It is a meager enough proposition that "due consideration" of evidence that a circuit court is asked to admit at trial would necessarily include that the circuit court examine what the evidence is. Certainly, that portion of Collins's argument is preserved.
I would reverse and remand this case for a new trial.