Cite as 2020 Ark. App. 422

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CR–20–52

| | |
|---|---|
| | **OPINION DELIVERED:** SEPTEMBER 23, 2020 |
| RACHEL CALLAWAY | |
| APPERLLANT | APPEAL FROM THE BAXTER COUNTY CIRCUIT COURT [NO. 03CR-18-244] |
| V. | HONORABLE GORDON WEBB, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Rachel Callaway appeals her convictions by the Baxter County Circuit Court on two charges of delivery of methamphetamine and one charge of unlawful use of a communication device. Her sole argument on appeal is a challenge to the sufficiency of the evidence supporting those convictions. We affirm.

I. *Facts and Procedural History*

On May 29, 2018, Callaway was charged with delivery of methamphetamine, a Class B felony (for the May 7, 2018 purchase of 8.0775 grams); delivery of methamphetamine, a Class A felony (for the May 9, 2018 purchase of 16.0927 grams); unlawful use of a communication device, a Class C felony, and proximity to certain facilities, a Class C felony. Callaway waived her right to a jury trial, and a bench trial was held on May 21, 2019, at which she was represented by appointed counsel. Four witnesses testified at trial: (1) Officer George Eddings; (2) Officer Van Nowlin; (3) Benjamin Gilbert, a forensic chemist at the

Arkansas State Crime Laboratory (ASCL); and (4) Beverly Rogers, an inmate at the Baxter County Detention Facility who acted as a confidential informant (CI) for the drug task force.

Callaway's counsel moved for a directed verdict at the close of the State's case-in-chief, arguing that because the State failed to prove that Callaway had taken an active role in the two controlled-buy drug transactions sufficient to establish her as anything other than a "middleman," the evidence was insufficient to support the delivery-of-methamphetamine charges. The circuit court denied the motion; the defense put on no additional evidence; and counsel renewed the motions for directed verdict for the record. The circuit court denied the renewed motions and took the matter under advisement to read certain caselaw presented by Callaway's counsel.

Callaway was convicted on the first three charges:[1] delivery of methamphetamine, a Class B felony; delivery of methamphetamine, a Class A felony;[2] and unlawful use of a communication device, a Class C felony. She was sentenced to 120 months' imprisonment in the Arkansas Department of Correction on each conviction, to run concurrently, pursuant to June 25 and 27 sentencing orders. Callaway filed a timely notice of appeal on July 18.

---

[1]The fourth charge of proximity to certain facilities, a Class C felony, previously had been dismissed on motion of the State.

[2]Arkansas Code Annotated § 5-64-422(b)(3) (Repl. 2016) provides that delivery of methamphetamine is a Class Y felony; however, the information incorrectly identified it as a Class A felony. Prior to sentencing, the State acknowledged that error and agreed to sentencing based on a Class A felony.

## II. *Standard of Review*

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *E.g.*, *Haney v. State*, 2020 Ark. App. 341, at 5, 602 S.W.3d 154, 157. On appeal from a denial of a motion for a directed verdict, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* In determining whether there is substantial evidence to support the verdict, this court reviews the evidence in the light most favorable to the State and considers only that evidence that supports the verdict. *Id.* Substantial evidence is evidence that is of sufficient force and character to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* at 5–6, 602 S.W.3d at 158. In reviewing a challenge to the sufficiency of the evidence, this court will not weigh the evidence or assess the credibility of witnesses; those are matters for the fact-finder. *E.g.*, *T.R. v. State*, 2018 Ark. App. 328, at 6, 552 S.W.3d 425, 456.

## III. *Discussion*

Callaway first argues that the circuit court erred in denying her timely motions for directed verdict based on the insufficiency of the evidence regarding the delivery-of–methamphetamine charges, but the evidence presented at trial supports the opposite conclusion.

At trial, the State's first witness was Officer George Eddings of the Baxter County Sheriff's Office. He serves as a criminal investigator primarily for narcotics cases. In May 2018, Officer Eddings conducted a series of two controlled drug buys on May 7 and May 9

through which quantities of methamphetamine were purchased using CI Rogers as the buyer. CI Rogers had been arrested on another charge and was cooperating with law enforcement officials to resolve that charge.

Officer Eddings explained the procedure followed by officers when using a CI to perform a "controlled buy" of narcotics and specifically how that procedure was followed in Callaway's case. This procedure included recording both video and audio of the entire process, which was watched in real time, from when Callaway met with CI Rogers to when CI Rogers returned to the Mountain Home Police Department to hand over the methamphetamine purchased to Officer Eddings.

Regarding the first controlled buy between CI Rogers and Callaway that occurred on May 7, Officer Eddings testified that CI Rogers had previously spoken to Callaway and arranged to purchase eight grams of methamphetamine for $400. Officer Eddings explained that he met CI Rogers behind the Mountain Home Police Department, searched both CI Rogers and her vehicle, provided her with the funds to purchase the methamphetamine, and gave her a phone that would record and transmit audio and video during the controlled buy. After the initial meeting, CI Rogers picked up Callaway at a nearby Harps grocery store and drove her to a house approximately three or four miles away to meet with Dwayne Burr. The recordings indicate that Burr told CI Rogers and Callaway that he needed fifteen minutes to get the drugs ready. While waiting to purchase the drugs, CI Rogers and Callaway drove around town before returning to meet with Burr and purchase 8.6 grams of methamphetamine for $400. Following the controlled buy, CI Rogers met back up with

Officer Eddings while Callaway remained behind at the residence with Burr. CI Rogers turned over the purchased drugs to officers; the drugs field tested to be methamphetamine.

On May 9, just two days later, a second controlled buy took place between CI Rogers and Callaway. CI Rogers informed Officer Eddings that she had spoken with Callaway on the phone and this time had arranged to buy sixteen grams of methamphetamine. After meeting with officers as before, CI Rogers went directly to the same residence where the first controlled buy took place. She walked into the house and was greeted by Callaway and Burr. Burr once again left to retrieve the drugs, and when he returned, CI Rogers purchased approximately sixteen grams of methamphetamine for $800. As a result of his real-time observation of the audio and video received from CI Rogers, Officer Eddings opined that the drug deal was set up by Callaway.

Officer Van Nowlin of the 14th Judicial Drug Task Force testified next, explained that while monitoring the controlled drug buy, he personally observed Callaway bartering with CI Rogers on the price of the drugs to be purchased. Officer Nowlin stated there was no doubt that Callaway was part of the drug-dealing transaction. He explained that Officer Eddings was leading the controlled buys during which CI Rogers purchased drugs from Callaway and Burr. Officer Nowlin acknowledged that he did not have contact with CI Rogers and that his roll was for safety and surveillance purposes to see who else was moving in the area. Officer Nowlin noted that he was unaware of who owned the residence involved in the controlled buys and that he reviewed neither the audiotapes nor the videotapes of the controlled buys. Officer Nowlin stated that his information regarding the controlled buys was obtained from Officer Eddings, Officer Steele, and related reports.

Benjamin Gilbert, the forensic chemist with the ASCL and the analyst on both of Callaway's drug cases, testified for the State regarding the methods used to test chemical samples and the chain-of-custody procedures utilized. Gilbert stated that he had, in one submission, received two plastic bags, tested them, and found both to be methamphetamine—the total weight of the first was 16.0927 grams; and in a second submission, the total weight was 8.0775 grams.

CI Beverly Rogers, who performed the two controlled buys, testified regarding Callaway's involvement in the two transactions. CI Rogers characterized Callaway as "the middleman pretty much" because Callaway was the person with whom she made the arrangements to purchase the methamphetamine. CI Rogers testified that Callaway had intimate knowledge of the neighborhood around Burr's house, instructed CI Rogers to pick her up from a local Harps grocery store, set the price for the purchases, and helped facilitate both transactions. CI Rogers testified that she assumed Callaway obtained the price for the drugs from Burr because the drugs did not belong to her. CI Rogers admitted that Callaway did not hand her the drugs, that Burr just put them on the counter, and that she left the money with Burr.

At the time of trial, CI Rogers was a resident of the Baxter County Detention Facility. She explained that she had met Callaway at that correctional facility a few months before she was released. CI Rogers testified that she had contacted the Baxter County Sheriff's Office and discussed with them the potential of purchasing methamphetamine from Callaway.

CI Rogers stated that she sought a second purchase of drugs from Callaway shortly after the first controlled buy. She noted that Callaway told her the price was $800 for sixteen grams of methamphetamine. CI Rogers testified that she went to the same residence that Callaway had taken her for the first controlled buy, and when she arrived at the residence, Callaway and Burr were there along with another guy.

CI Rogers confirmed that Officer Eddings supplied her with video equipment and that the two controlled-buy transactions with Callaway were recorded. The recordings showed that Callaway directed CI Rogers to the residence of Burr. CI Rogers testified that Callaway explained to her that Burr would leave to obtain the drugs and bring them back to the residence. She confirmed that Callaway introduced her to Burr, after which Burr and CI Rogers discussed the amount of drugs to be purchased and the price.

Callaway correctly notes that the level of criminal conduct attributed to her is the key issue in her challenge to the sufficiency of the evidence. She cites *Bowles v. State*, 265 Ark. 457, 460, 579 S.W.2d 596, 598 (1979), and *Yent v. State*, 9 Ark. App. 356, 358, 660 S.W.2d 178, 179 (1983), as examples of Arkansas appellate courts holding that a person who simply introduces a buyer to a seller cannot be convicted of delivery of a controlled substance or possession with intent to deliver. She also cites *Daigger v. State*, 268 Ark. 249, 252, 595 S.W.2d 653, 654 (1980), in which our supreme court held that a middleman must take a more active part to be a principal or even an accomplice. *See also Curry v. State*, 258 Ark. 528, 527 S.W.2d 902 (1975) (Curry held to have supplied sufficient involvement where he had taken the money from an undercover officer and returned with the drugs).

Callaway argues that according to Arkansas case law, the State was required to prove that her range of involvement in the two controlled buys fell somewhere between her merely introducing CI Rogers and Burr and her actually handling the money and drugs. We disagree with Callaway's assertion that her level of involvement was insufficient to support her delivery-of-methamphetamine convictions and note that the holding in *Yent*, *supra*, actually supports the circuit court's denial of her motions for directed verdict. This court held that Yent "did much more than merely introduce the officer to the sellers; he acted throughout the negotiations as an agent and accomplice of the seller by setting the price, arranging for the meeting, and leading the officer to the meeting spot." *Yent*, 9 Ark. App. at 358, 660 S.W.2d at 179. Here, similar to the appellant in *Yent*, Callaway (1) at least implicitly set the price for methamphetamine—at a minimum obtaining the information from Burr and relaying it to CI Rogers; (2) explicitly arranged for the two meetings with Burr; (3) had CI Rogers pick her up and led CI Rogers to the residence to meet Burr for the first controlled buy; (4) stayed behind with Burr after the first controlled buy. These actions could not reasonably have occurred without Callaway's arranging for the meeting between CI Rogers and Burr.

Regarding the second controlled drug buy, Callaway again communicated details by phone with CI Rogers, including the purchase price for the amount desired. Moreover, Callaway was waiting with Burr when CI Rogers arrived at the same residence where the initial controlled buy had occurred.

Rather than *Bowles*, *supra*, the facts in this case more closely resemble those in *Booker v. State*, 32 Ark. App. 94, 97, 796 S.W.2d 854, 856 (1990), in which Booker acted as an

8

agent for the seller. Booker arranged for the transactions, arranged for the purchaser to meet the seller, and "led the investigator along a circuitous route which ultimately led to the apartment where the drugs were purchased." *Id*. This court held that a jury could conclude that the evidence showed that Booker was actively aiding the drug dealer in the delivery of drugs by arranging the sales and meetings "which made the sales possible." *Id*. at 99, 796 S.W.2d at 857. Similarly, Callaway arranged the drug sales and the meetings required for CI Rogers to buy the drugs from Burr. Although there is conflicting information about whether Callaway or Burr was in control of the pricing, when viewed in conjunction with the other evidence, it is clear that Callaway was not a disinterested bystander merely introducing a potential buyer to a drug dealer. Because the testimony and the evidence before us support that Callaway was more than a simple "middleman" and helped facilitate both of the controlled buys, we hold that the circuit court did not err in denying her motions for directed verdict with respect to the delivery-of-methamphetamine charges.

Callaway also challenges her unlawful-use-of-communication-device conviction, *see* Arkansas Code Annotated section 5-64-404(b)(Repl. 2016), which requires proof that Callaway use such a device in "committing or in causing or facilitating the commission of any act constituting a felony" under the controlled-substance chapter. Callaway argues that because her actions did not constitute sufficient involvement to warrant felony convictions on the delivery-of-methamphetamine charges; the unlawful-use-of-communication-device charge must fail because there was no felony committed by her to facilitate with the device. An appellant is bound by the scope and nature of the arguments made at trial and may not change or enlarge those grounds on appeal. *See, e.g.*, *Collins v. State*, 2019 Ark. 110, at 6,

9

571 S.W.3d 469, 472. Because this argument was not raised below in Callaway's motion for a directed verdict, it is not preserved for our review. *E.g.*, *id*.

Affirmed.

VIRDEN and WHITEAKER, JJ., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael Y. Yarbrough*, Ass't Att'y Gen., for appellee.