Cite as 2022 Ark. 216

# SUPREME COURT OF ARKANSAS

**No.** CR–22–221

| | | |
|---|---|---|
| | | **Opinion Delivered:** December 8, 2022 |
| PARNELL R. MAY | | APPEAL FROM THE PULASKI |
| | APPELLANT | COUNTY CIRCUIT COURT |
| | | [NO. 60CR-17-169] |
| V. | | |
| | | HONORABLE LEON JOHNSON, |
| | | JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Parnell May appeals pro se from a Pulaski County Circuit Court order convicting him of capital murder and sentencing him to life imprisonment. He presents seven points for reversal, including the following: (1) substantial evidence does not support his capital-murder conviction; (2) the circuit court abused its discretion by excluding the victim's emergency-room medical records and a death certificate; and (3) the deputy chief medical examiner provided invalid forensic testimonial evidence. We affirm.

## I. *Facts*

May proceeded pro se at his three-day jury trial for the capital murder of his girlfriend Anna Morales. At trial, James Woodell testified that on December 3, 2016, he was living in a duplex next door to May and Morales. That day, Morales knocked on his door and asked Woodell if he would come next door and help May fix his radio. Woodell agreed, followed her next door, and fixed the radio. May and Morales began arguing, and Woodell heard

May threaten her, saying "I'll beat you to death[,]" and "I'll put you six foot down[.]" May then apologized to Morales and Woodell. Later that night, Woodell was getting ready for bed about 11:00 and heard music blaring. He knocked on May's door, which was cracked open, and saw May in the kitchen taking pictures with his cell phone. Woodell also saw Morales lying on the floor. She was moving a little bit and appeared to be mumbling, so Woodell thought she was drunk. When May finally came to the door, Woodell asked him to turn down the radio, and May did so.

Around 7:00 the next morning, as Woodell left for work, he saw Morales lying outside on the porch step. He thought she might have been drunk and fallen asleep, so he nudged her with his foot, but she did not respond. She looked pale, had bruising on her face, and he could not tell if she was breathing. He called 911. Woodell also recalled that he did not see May that morning. Woodell entered May's duplex around noon that day to leave food and water for the cats. He went back that evening and noticed a pair of boots by the door that had not been there at lunch. He left and called the police. They arrived several minutes later and found May hiding in a bedroom between two mattresses.

Jeff Allison, a detective with the Pulaski County Sheriff's Office, testified that he obtained a search warrant and, during his search of the duplex, found a black metal pipe and a wooden walking stick with blood on them. The blood on the metal pipe and wooden stick was later identified as belonging to Morales.

Dr. Stephen Erickson, the Deputy Chief Medical Examiner for the State of Arkansas, testified that he performed an autopsy on Morales. He determined that her cause of death was multiple blunt-force injuries inflicted by another individual. Dr. Erickson testified that

she "was subjected to a serious, prolonged, multi factorial assault[.]" When describing the injuries to her head, Dr. Erickson remarked that "this would've taken time and effort to strike her head this many times to cause these injuries." He noted facial injuries that included a split eyelid, a lacerated ear, a missing tooth, and a torn lip. He also described her many internal injuries, including multiple rib fractures and a lacerated liver. He remarked that the "description of the stick and the pipe both fit with those kind of wounds" sustained by Morales. In Dr. Erickson's opinion, Morales suffered all of the blunt-force injuries, including fourteen fractured ribs and a lacerated liver, while she was alive. He saw no postmortem injuries. His testimony was unequivocal that Morales "was beaten to death." Dr. Erickson reviewed the records of EMT responders, who noted "extensive trauma" and that Morales had no vital signs and was cold to the touch when they arrived. They attempted to revive her, but nothing they did had any physiological response. Dr. Erickson opined that, "in all likelihood, she was dead at the scene." Dr. Erickson reviewed the hospital records from when Morales arrived at Baptist Health North Little Rock, and those records indicated that she had no vital signs when she arrived at the hospital.

After the State rested its case, May re-called several of the State's witnesses. He also called Nicholas Donahue, a death investigator for the Pulaski County Coroner's Office, who testified that CPR very rarely causes rib fractures. Additionally, May called Dr. Charles Kokes, who was the Chief Medical Examiner for the State of Arkansas in 2016. Dr. Kokes had reviewed the autopsy report on Morales and agreed with Dr. Erickson that her cause of death was multiple blunt-force injuries. Dr. Kokes also testified that although resuscitation

3

complications can include rib fractures or bruising to internal organs, that is "very uncommon to rare."

May testified on his own behalf and admitted that he and Morales began fighting the afternoon of December 3 because she thought he was watching pornography. May admitted that he had been drinking, hit her, and "in this situation, it was too extreme[.]" He acknowledged that he had beat her "over and over" with the stick but claimed that "that iron pipe never touched her." He admitted beating her for ten minutes and acknowledged causing all of her injuries that were depicted in the medical examiner's photographs except for her tooth being knocked out. He described the injuries he had inflicted as "vicious" and "violent." He nonetheless claimed that he was not guilty of causing her death. He asserted that Morales died from a combination of the cold weather and resuscitation efforts by first responders.

The jury convicted May of capital murder and sentenced him to life imprisonment. He filed a timely notice of appeal, and this appeal followed.

## II. *Points on Appeal*

### A. Sufficiency of the Evidence

In points one, two, three, and six on appeal, May challenges the sufficiency of the evidence supporting his conviction. In point one, he asserts that only an "obscure or merely probable connection" existed between the assault and Morales's death, and that the cause-of-death determination by the medical examiner was flawed. In point two, May contends that substantial evidence does not support his conviction because the State failed to exclude other reasonable hypotheses consistent with his innocence. In point three, May contends that

the State presented insufficient evidence that blunt-force injuries caused Morales's death. In point six, May asserts that the evidence presented at trial does not demonstrate his guilt beyond a reasonable doubt. Because these arguments concern May's theory that, although he admitted having beaten Morales, those injuries sustained as a result of the beating did not cause her death, we will discuss them in tandem.

On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *McClendon v. State*, 2019 Ark. 88, at 3, 570 S.W.3d 450, 452. In reviewing this challenge, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.*, 570 S.W.3d at 452. We will affirm the verdict if substantial evidence supports it. *Id.*, 570 S.W.3d at 452. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.*, 570 S.W.3d at 452. This court does not weigh the evidence presented at trial or assess the credibility of the witnesses, as those are matters for the fact-finder. *Halliburton v. State*, 2020 Ark. 101, at 10, 594 S.W.3d 856, 863. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*, 594 S.W.3d at 863.

With these standards in mind, we turn to May's arguments challenging the sufficiency of the evidence supporting his capital-murder conviction. May committed capital murder if, with the premeditated and deliberated purpose of causing the death of another person, he caused the death of any person. *See* Ark. Code Ann. § 5-10-101(a)(4) (Repl. 2013). Again, his sufficiency challenges center on his contention that, although he admittedly beat Morales on December 3, the State failed to present substantial evidence that his conduct caused her

death. Instead, he claims that her death was caused by the resuscitation efforts of first responders or by the cold weather that she endured prior to being found unresponsive on the porch of his duplex the morning of December 4.

Here, Dr. Erickson testified that Morales's cause of death was multiple blunt-force injuries inflicted by another individual. When pressed by May on cross-examination about his theory on causation, Dr. Erickson remained firm that Morales "was beaten to death." He further opined that Morales suffered all of the blunt-force injuries while she was alive, as he saw no postmortem injuries. Additionally, the first responders that transported Morales to the hospital noted that although they attempted to revive her, nothing they did had any physiological response. They further noted that she had "extensive trauma," no vital signs, and was cold to the touch when they arrived.

Ultimately, May's arguments challenge the credibility of the witnesses at trial. The jury believed Dr. Erickson's testimony that Morales was beaten to death over May's version of events. This determination was strictly within the province of the jury. *Halliburton*, 2020 Ark. 101, at 10, 594 S.W.3d at 863. We hold that substantial evidence supports May's capital-murder conviction, and we affirm on his points challenging the sufficiency of the evidence.

B.  Exclusion of Evidence

In his fourth and fifth points on appeal, May argues that the circuit court abused its discretion in the guilt phase of trial by excluding Morales's emergency-room medical records and a death certificate. He sought to introduce these items during his cross-examination of Dr. Erickson.

6

Circuit courts have broad discretion in deciding evidentiary issues, and we will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion. *Collins v. State*, 2019 Ark. 110, at 5, 571 S.W.3d 469, 471–72. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.*, 571 S.W.3d at 472. Furthermore, we will not reverse unless the appellant demonstrates that he was prejudiced by the evidentiary ruling. *Id.*, 571 S.W.3d at 472.

1. *Medical records*

During his cross-examination of Dr. Erickson, May attempted to introduce thirty-four pages of Morales's emergency-room medical records pursuant to Arkansas Rule of Evidence 803(6). The State objected because May did not present a records custodian to testify about the contents of the records. The circuit court agreed and ruled that, to have these medical records admitted as business records, May needed to "ask for a custodian to come in and testify about what these are." The circuit court excluded the records, but allowed May to cross-examine Dr. Erickson about the information contained in them.

Rule 803(6) provides that

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

We have stated that although a medical record might be admissible as a business record, and thus an exception to the hearsay rule under Rule 803(6), a foundation must be laid for the admission of such a document, and the elements of the foundation must be shown by testimony of the custodian or another qualified witness. *Branscomb v. State*, 299 Ark. 482, 489, 774 S.W.2d 426, 429 (1989). Here, May sought to introduce the emergency-room medical records, not through the testimony of a records custodian, but while cross-examining the chief deputy medical examiner. Therefore, May did not satisfy the foundation requirement in Rule 803(6). We hold that the circuit court did not abuse its discretion by excluding the records in these circumstances, and we affirm.[1]

## 2. *Death certificate*

---

[1]Although May cited Rule 803(6) at trial, he repeatedly asserted that the records were admissible because he had obtained an affidavit from the medical-records custodian. Under Arkansas Code Annotated section 16-46-108(a)(1) (Repl. 1999),

> Any record or set of records or photographically reproduced copies of such records which would be admissible under Rule 803(6) or (7) of the Arkansas Rules of Evidence shall be admissible in evidence in any court in this state upon the affidavit of the person who would otherwise provide the prerequisites of Rule 803(6) or (7) that such records attached to such affidavit were in fact so kept as required by Rule 803(6) or (7), *provided, further, that such record or records, along with such affidavit, are filed with the clerk of the court for inclusion with the papers in the cause in which the record or records are sought to be used as evidence at least fourteen (14) days prior to the day upon which the trial of said cause commences*, and provided the other parties to said cause are given prompt notice by the party filing same of the filing of such record or records and affidavit, which notice shall identify the name and employer, if any, of the person making the affidavit, and such records shall be made available to the counsel for other parties to the action or litigation for inspection and copying.

(Emphasis added.) The record on appeal in this case includes a notice and "Affidavit of Custodian of Medical Records" filed by May at least fourteen days prior to the start of trial, but the medical records at issue were not attached to the notice and affidavit. To the extent that May was attempting to introduce the records without the testimony of a custodian pursuant to section 16-46-108, he failed to meet the requirements of that statute.

May next argues that the circuit court abused its discretion in excluding a death certificate that he sought to admit while cross-examining Dr. Erickson. The State objected to its admission because Dr. Erickson did not generate the form. May responded that the document was admissible pursuant to Arkansas Code Annotated section 12-12-313 (Supp. 2021) because it was "competent evidence that . . . was written by [Dr. Erickson]." The circuit court disagreed and excluded it.

Arkansas Code Annotated section 12-12-313 states, in pertinent part, that

(a) The records and reports of autopsies, evidence analyses, drug analyses, and any investigations made by the State Crime Laboratory under the authority of this subchapter shall be received as competent evidence as to the matters contained therein in the courts of this state subject to the applicable rules of criminal procedure or civil procedure when duly attested to by the Director of the State Crime Laboratory or his or her assistants, associates, or deputies.

. . .

(d)(1) All records and reports of an evidence analysis of the laboratory shall be received as competent evidence as to the facts in any court or other proceeding when duly attested to by the analyst who performed the analysis.

Here, although the circuit court refused to admit the document, it nonetheless allowed May to question Dr. Erickson about it. Dr. Erickson explained that the document May sought to introduce was not an official copy of Morales's death certificate. He would have to obtain that from the health department. Additionally, although Dr. Erickson had filled out the immediate cause of death on the certificate as "Multiple Blunt Force Injuries," he explained that he did not "fill out all those details. That's up to the funeral home and the state health department." Given that the document was not generated by Dr. Erickson and was not an official copy of Morales's death certificate, we hold that the circuit court did not abuse its discretion in refusing to admit the document, and we affirm.

## C. Dr. Erickson's Testimony

In his seventh point on appeal, May argues that Dr. Erickson's testimony constituted "invalid forensic testimonial evidence" and resulted in May's wrongful conviction. It is well established that a contemporaneous objection is required to preserve an issue for appeal. *See Friday v. State*, 2018 Ark. 339, at 9, 561 S.W.3d 318, 324. May failed to contemporaneously object at trial to Dr. Erickson's testimony as being invalid or fraudulent. Thus, we hold that May's argument is unpreserved for appeal.

To the extent that May's argument amounts to a sufficiency-of-the-evidence challenge attacking Dr. Erickson's credibility as a witness, as stated above, that credibility determination was for the jury to make, not this court on appeal. *See, e.g.*, *Halliburton*, 2020 Ark. 101, at 10, 594 S.W.3d at 863. Accordingly, we affirm on this point.

## III. *Rule 4-3(a)*

Because May received a life sentence, this court, in compliance with Arkansas Supreme Court Rule 4–3(a), has examined the record for all objections, motions, and requests made by either party that were decided adversely to May. No prejudicial error has been found.

Affirmed.

*Parnell R. May*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Sr. Ass't Att'y Gen., for appellee.