# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1008
_____

United States of America

*Plaintiff - Appellee*

v.

Lonnie Dale Spotted Bear

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota - Bismarck
_____

Submitted: November 15, 2018
Filed: April 11, 2019
_____

Before COLLOTON, SHEPHERD, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

A jury found Lonnie Dale Spotted Bear guilty of four counts of sexual abuse involving three young female relatives. On appeal, he challenges the district court's[1] decision to allow the government to play video recordings of their forensic interviews for the jury. We affirm.

_____

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

N.H.E., S.H., and M.S. accused Spotted Bear of molesting them at his home. As part of the investigation into their accusations, a specially trained social worker conducted a videotaped interview with each victim. After the investigation concluded, the government charged Spotted Bear with two counts of aggravated sexual abuse of a child under 12, one count of attempted aggravated sexual abuse of a child under 12, and one count of abusive sexual contact with a child under 12. *See* 18 U.S.C. §§ 2241(c), 2244(a)(5).

Spotted Bear's defense was that the three girls fabricated the allegations due to an unrelated family disagreement and then embellished them in response to pressure and coaxing by investigators. During Spotted Bear's trial, all three girls testified and described the abuse. To respond to the fabrication defense, the government played a portion of each girl's forensic interview for the jury. Their responses during the interviews were generally consistent with their answers at trial.

Spotted Bear never objected at trial to the portions of the recordings that the government played for the jury. Only now, on appeal, does he claim that they were inadmissible because they contained hearsay. *See* Fed. R. Evid. 802. In the absence of an objection, we review only for plain error, which requires Spotted Bear to show that the district court made a "clear or obvious" error that affected his substantial rights and that the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. White Bull*, 646 F.3d 1082, 1091 (8th Cir. 2011) (citation omitted); *see also* Fed. R. Crim. P. 52(b).

We analyze N.H.E.'s interview first, because the circumstances leading to its admission are different than for the other recordings. From the outset, Spotted Bear's theory was that N.H.E.'s trial testimony was an embellished version of what she had said during her forensic interview, which itself embellished upon her original allegations. In his opening statement, for example, Spotted Bear's counsel claimed that investigators encouraged N.H.E. "to say more stuff." And later, while cross-examining N.H.E., Spotted Bear's counsel asked whether she had "added

some more things that [she] didn't tell [the forensic interviewer]." He followed up by inquiring whether, during the forensic interview, she had "added to [her] story." N.H.E. answered yes to both questions but did not explain what she added. This line of questioning, especially in light of Spotted Bear's theory of witness manipulation, could have left the jury with the mistaken impression that N.H.E. had significantly changed her story.

When a criminal defendant creates a false or misleading impression on an issue, we have held the government may "clarify, rebut, or complete [the] issue" with what would "otherwise [be] inadmissible evidence, including hearsay statements." *United States v. Eagle*, 515 F.3d 794, 801 (8th Cir. 2008). The government played the recording to allow the jury to judge for itself whether N.H.E. had in fact changed her story since her forensic interview. *Cf. United States v. Smith*, 591 F.3d 974, 982 (8th Cir. 2010) (holding that a defendant opened the door to the playing of a recording of a child-sex-abuse victim's forensic interview by asking the interviewer about alleged inconsistencies between the victim's trial testimony and her interview). Having opened the door to this evidence, Spotted Bear cannot now complain about its admission.[2] Accordingly, the district court did not err, much less plainly err, when it allowed the government to play the recording of N.H.E.'s forensic interview for the jury. *See Eagle*, 515 F.3d at 801; *United States v. Womochil*, 778 F.2d 1311, 1315 (8th Cir. 1985).

The remaining two recordings call for a different analysis because Spotted Bear's counsel did not open the door to their admission through his questioning of S.H. or M.S. Still, Spotted Bear failed to object to either recording, so he must

---

[2]After the government played part of N.H.E.'s interview for the jury, Spotted Bear asked the court to play an additional segment that he believed was particularly favorable to his defense. To the extent he now complains about the hearsay evidence he introduced, he invited the error and cannot challenge it. *See United States v. Jewell*, 614 F.3d 911, 920 (8th Cir. 2010); *see also United States v. Balfany*, 965 F.2d 575, 583 (8th Cir. 1992) (holding that a defendant cannot object to evidence that he directly "elicited").

satisfy the plain-error test to receive any relief. For two reasons, he has not met his burden of showing that the recordings affected his substantial rights. *See United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (stating that courts must "demand[] strenuous exertion" from defendants before granting relief on plain-error review).

First, the recordings were largely "cumulative of other government evidence." *United States v. Worman*, 622 F.3d 969, 977 (8th Cir. 2010). S.H.'s sister, for example, testified at length about S.H.'s abuse, and N.H.E. separately told the jury that S.H. had confided in her about the abuse, even before either girl had told her parents. The jury also learned about the specifics of M.S.'s abuse from two sources other than the recording: M.S.'s own trial testimony as well as the testimony of her mother. Her mother's testimony, in particular, echoed M.S.'s forensic interview, including the crucial fact that Spotted Bear molested her at his home on Thanksgiving. To be sure, some of this other evidence may also have been hearsay, but the fact that Spotted Bear does not challenge it means that we can consider it in evaluating whether he was prejudiced. *See United States v. Peneaux*, 432 F.3d 882, 895 (8th Cir. 2005).

Second, the evidence of Spotted Bear's guilt was strong overall. *See United States v. Gayekpar*, 678 F.3d 629, 638 (8th Cir. 2012); *see also United States v. Ramos-Caraballo*, 375 F.3d 797, 804 (8th Cir. 2004) ("Especially [when] there is strong evidence of guilt, some improper repetition of testimony . . . in a generalized effort to bolster the witness[] matters little." (brackets, internal quotation marks and citation omitted)). Specifically, the jury heard that Spotted Bear engaged in a lengthy pattern of sexual abuse, that all three of his victims were female relatives under the age of 12, and that he molested them in a similar fashion. *Cf. United States v. Never Misses A Shot*, 781 F.3d 1017, 1027 (8th Cir. 2015) (stating that "evidence that the defendant committed similar sexual assaults or child molestations" can be used to prove guilt). In the end, the recordings were just "an extra helping" of what the jury had already heard and "added nothing of substance to the government's case." *Ramos-Caraballo*, 375 F.3d at 803–04 (citation omitted).

Accordingly, we affirm the judgment of the district court.

_____