Cite as 2023 Ark. 16

# SUPREME COURT OF ARKANSAS
**No.** CR–22–513

|  |  |  |
|---|---|---|
| | | **Opinion Delivered:** February 23, 2023 |
| JASON HUMPHRY | | |
| | APPELLANT | APPEAL FROM THE PIKE COUNTY CIRCUIT COURT [NO. 55CR-20-76] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE TOM COOPER, JUDGE |
| | APPELLEE | |
| | | <u>AFFIRMED; MOTION TO WITHDRAW GRANTED; REMANDED TO CORRECT SENTENCING ORDER</u>. |

**COURTNEY RAE HUDSON, Associate Justice**

Pike County Circuit Court jury convicted appellant Jason Humphry of first-degree murder and sentenced him to life imprisonment in the November 3, 2020 death of his mother, Theresa Humphry. Jason's[1] appellate counsel has filed a motion to withdraw as counsel and a no-merit brief pursuant to Arkansas Supreme Court Rule 4-3(b)(1) (2022) and *Anders v. California*, 386 U.S. 738 (1967), stating that there are no meritorious grounds for an appeal. In compliance with Rule 4-3(a), the State has certified that all adverse rulings have been briefed and recommends that the circuit court be affirmed in all respects. Having reviewed the record and the briefs, we affirm the conviction and sentence and grant counsel's motion to withdraw, but we remand to correct a clerical error in the sentencing

---

[1]Because several Humphry family members testified, we use first names for clarity.

order.

On December 9, 2021, the State charged Jason with first-degree murder in violation of Arkansas Code Annotated section 5-10-102(a)(2) (Repl. 2013). A jury trial was held on March 8–9, 2022. The trial included testimony from several of the victim's family members, as well as investigators and experts.

Nikki McLelland is Jason's sister. She testified that she talked to her mother, Theresa, every day. She said that Theresa told her that she was scared and needed some help to get Jason out of the house. Sarah Haney, who testified that she had been friends with Theresa for almost thirty years, recalled Theresa saying that she was "scared to death" of Jason and that he said he was "going to bash [her] head in with a hammer."

Jason's brother, Josh Humphry, testified that he was aware that Jason had returned to their mother's Billstown Road residence in Pike County shortly before her murder. This caused Josh concern because he had heard Jason say that he would like to "bash [Theresa's] brains in." Josh said that he went to Theresa's house on November 3, 2020, and found the door locked. Eventually, Josh's seven-year-old nephew came to the door and said that Theresa had left with Nikki. However, when Josh entered the home, he found blood on the walls and asked Jason where Theresa was. Jason said he did not know, so Josh left and called Nikki to see if Theresa was with her. Nikki said that she was not, and Josh called 911. He stated that he met his father, Rick Humphry, coming up the road to the home and told him that he thought Jason had killed Theresa. Josh testified that Rick "took off" toward the house, got there before he did, and got into a scuffle with Jason. Josh then arrived at the home and saw Theresa's body lying on the floor. Josh said that he and Jason began to "tussle"

until he was able to hold Jason down. Eventually, Josh said, he let Jason up and Jason began to run to Josh's truck where there was a rifle. Josh said that he got there first and held the gun where Jason could not get it. Josh recalled Jason saying that "she deserved it."

When authorities were called, Pike County Chief Deputy Wayne Epperly was dispatched to Theresa's home. Epperly responded with then Chief Deputy Greg Harmon and investigator Brady Whisenhunt. When Epperly arrived, he found Jason at the scene and asked what happened. Jason then said that Epperly knew what happened. Josh told Epperly, "[W]ell, he killed my mother. That's what happened." Epperly took Jason into custody and placed him into the back seat of the police car. Epperly then went into the home where he found Theresa "obviously deceased." Pike County authorities secured the scene and waited for the state police to arrive to assist in the investigation.

The State introduced multiple photographs showing Theresa's body lying on the floor inside the home and blood on the walls. Other photos showed a pipe with blood and hair on it. Investigators also took photographs of Jason at the scene that showed blood on his skin, shirt, and pants. Some of the photos of Jason showed scratches on his neck and ears. Expert medical testimony established that Theresa died of cranial cerebral injuries after being struck multiple times in the head and sustaining injuries that could have been caused by the pipe recovered at the scene. DNA on the pipe was consistent with Theresa's. Jason himself testified. He said that he had been found competent to stand trial and that he has five prior felony convictions. Jason claimed that he heard voices telling him that when he was asleep, Theresa would pass his son out of a window to be molested. He said that for months prior to November 3, he would lie in the bushes outside of Theresa's house to make sure she could

3

not pass the child out of a window. Jason said that he was in the bushes watching Theresa's house on November 3 when Theresa came out "hollering" at him and threatening to have him "committed or admitted[.]" He said that he had "that pipe" in his hand and struck Theresa in the back of her head and then "hit her a couple of more times while she was on the floor." He said that he then dragged her into a bedroom and went out to chase the people whose voices he had heard. Jason testified that when he returned, he hung a towel to cover blood that was on the wall and "cleaned everything up[.]" According to Jason, he then went to sleep and "slept better than [he] had slept in years."

The circuit court denied Jason's motions for directed verdict, and the jury convicted him of first-degree murder and sentenced him as a habitual offender to life imprisonment. After his conviction, Jason filed a timely appeal. Pursuant to *Anders* and Rule 4–3(b)(1), his attorney filed a no-merit brief. Jason was given an opportunity to raise pro se points within thirty days after the date his attorney's no-merit brief was filed, but he did not do so. The State agrees that there is no merit to the appeal and recommends affirmance in all respects. We turn now to Jason's no-merit appeal.

The United States Supreme Court has held that "if counsel finds his [or her] case to be wholly frivolous, after a conscientious examination of it, he [or she] should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744. Rule 4-3(b)(1) provides that a no-merit brief "shall contain an argument section that consists of a list of all rulings adverse to the defendant made by the circuit court on all objections, motions and requests made by either party with an explanation as to why

4

each adverse ruling is not a meritorious ground for reversal." The test is not whether counsel thinks the circuit court committed no reversible error, but whether the points to be raised on appeal would be wholly frivolous. *Anders*, 386 U.S. at 744. Pursuant to *Anders*, this court is required to determine whether the case is wholly frivolous after a full examination of all the proceedings. *Riley v. State*, 2020 Ark. 99.

Counsel has complied with the requirements of *Anders* and Rule 4–3(b)(1) and states that there is no meritorious ground for reversal. Counsel has briefed five adverse rulings that he contends provide no basis for reversal. We address each below.

First, counsel notes that when Josh began to testify that Jason said he would like to bash Theresa's brains, Jason objected and argued it was inadmissible hearsay. The State argued that it was not hearsay because it was an admission by a party. The circuit court overruled the objection. Counsel argues that this ruling does not provide a basis for reversal. Circuit courts have broad discretion in deciding evidentiary issues, and we will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion. *Smith v. State*, 2022 Ark. 95. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Collins v. State*, 2019 Ark. 110, 571 S.W.3d 469. Additionally, we will not reverse unless the appellant demonstrates that he or she was prejudiced by the ruling. *Id*.

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ark. R. Evid. 801(c) (2021). However, a statement made by a party opponent is not hearsay. Ark. R.

5

Evid. 801(d)(2)(i). A statement made by a defendant and offered against him at trial constitutes an admission of a party opponent. *Smith v. State*, 2009 Ark. 453, 343 Ark. 319. Jason was a party opponent, and his statements are not hearsay; therefore, the circuit court did not abuse its discretion in overruling Jason's objection.

Next, counsel argues that the circuit court did not abuse its discretion when it overruled Jason's objection to Haney's testimony that Theresa said Jason had threatened to bash her head with a hammer. Counsel argues that any error here was harmless. We hold that that Haney's testimony was cumulative to Jason's own testimony that Jason did, in fact, kill Theresa by hitting her in the head multiple times. Therefore, Jason was not prejudiced, and the circuit court's ruling is not reversable error.

Counsel next argues that the circuit court did not err when it denied Jason's motion for directed verdict and his renewed motion for directed verdict. Jason's motion for directed verdict stated:

> At this time, the defense would make a motion of directed verdict based on the fact that the state has not met its burden of proof in establishing evidence to meet every element of the charges in which Mr. Humphrey is charged today.

Jason argued in his renewed motion for directed verdict:

> Your Honor, I'd just like to—at this time to renew my motion for directed verdict based on the same basis that the state has not proven each and every element of their—of the offense beyond a reasonable doubt.

According to counsel, the motions were properly denied for two reasons. First, counsel argues that the State presented evidence that Jason committed first-degree murder. Second, counsel contends that the motions were properly denied because they did not state the specific grounds as required by Ark. R. Crim. P. 33.1(a) (2021).

On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. To preserve a challenge to the sufficiency of the evidence, a defendant must move for a directed verdict at the close of the State's case and at the close of all the evidence and must state the specific grounds for the motion. *Break v. State*, 2022 Ark. 219, 655 S.W.3d 303; Ark. R. Crim. P. 33.1 (2021). We have held that Rule 33.1 is to be strictly construed and that the failure to adhere to the rule constitutes a waiver as to any question pertaining to the sufficiency of the evidence to support the verdict. *Break*, 2022 Ark. 219, 655 S.W.3d 303. In this instance, neither directed-verdict motion stated a specific ground upon which it should be granted. Strictly construing Rule 33.1, as we must, we hold that the circuit court did not err in denying the motions.

The final unfavorable ruling that counsel briefed was the circuit court's sustaining the State's hearsay objection to Jason's testimony about his mother's statements. Jason sought to testify that he heard his parents talk badly about him and that when he asked his mother about it, she said that they were not talking about him and that he must have been hearing voices. The State objected to the testimony as hearsay, and Jason argued that the statements were admissible pursuant to the present-sense-impression exception. Counsel contends that there is no merit to an argument that the circuit court abused its discretion in sustaining the objection.

The present-sense-impression exception allows a statement that describes or explains an event or condition made while the declarant is perceiving the event or condition, or immediately thereafter. Ark. R. Evid. 803(1). Counsel argues that Theresa described the

event as she was perceiving it and that her statement was admissible pursuant to Rule 803(1). Although he contends that the circuit court erred in its ruling, counsel insists that there is no merit to arguing the point because the error did not prejudice Jason. Indeed, we have said that we will not reverse an evidentiary ruling absent a showing of prejudice. *Collins*, 2019 Ark. 110, 571 S.W.3d 469. Here, Jason admitted that he struck Theresa multiple times in the head with a pipe, and testimony about whether he was hearing voices had no bearing on any defense he raised. Therefore, we hold that there was no prejudice.

Finally, although it did not involve an unfavorable ruling, we observe that the sentencing order reflects that the circuit court sentenced Jason as a habitual offender under Arkansas Code Annotated section 5-4-501(a) (Repl. 2013), which applies to defendants who have been convicted of one to four prior felonies. In this instance, Jason has five prior felony convictions and should have been sentenced pursuant to Arkansas Code Annotated section 5-4-501(b). Although this error is not grounds for reversal, we remand with instructions for the circuit court to correct the sentencing order. *See Smith*, 2022 Ark. 95.

Rule 4-3(a) Review

Because Jason received a sentence of life imprisonment, the record has been reviewed for all errors prejudicial to him, as required by Arkansas Supreme Court Rule 4-3(a). No reversible error was found.

Affirmed; motion to withdraw granted; remanded to correct sentencing order.

WOMACK, J., concurs without opinion.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.