Cite as 2023 Ark. 69

# SUPREME COURT OF ARKANSAS

**No.** CR–22–409

| | | |
|---|---|---|
| | | **Opinion Delivered:** April 27, 2023 |
| MARLON TUCKER | | |
| | APPELLANT | |
| V. | | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT [NO. 47BCR-20-205] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE CHARLES M. MOONEY, JUDGE |
| | | |
| | | AFFIRMED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant Marlon Tucker appeals his convictions in the Craighead County Circuit Court for three counts of first-degree murder, one count of first-degree battery, and two counts of aggravated assault. The jury also found Tucker guilty of committing a murder in the presence of a child and using a firearm during the commission of the crime. He was sentenced as a habitual offender to three consecutive life sentences, plus sixty-five years' imprisonment. For reversal, Tucker argues that (1) the circuit court impermissibly stacked enhancements in its sentencing; (2) the circuit court erroneously excluded certain testimony as hearsay; (3) the circuit court erred by denying his motion for directed verdict on one of the aggravated-assault counts because the victim was not named in the criminal information; and (4) the circuit court erroneously denied his proffered manslaughter jury instruction. We affirm.

On June 27, 2020, Tucker fatally shot Oscar Lane, Virginia Bailey, and Joyce Adams during a party at Lane's residence in Blytheville, Arkansas. Tucker also shot Darnell Wilson, who survived, and Tucker shot at, but missed, Shalamar Ford and Terry Rogers. Based on these events, the State filed a criminal information on July 30, 2020, charging Tucker with three counts of first-degree murder, one count of first-degree battery, and two counts of aggravated assault. The State filed an amended information on September 3, 2020, charging Tucker as a habitual offender and adding sentence enhancements for using a deadly weapon during the commission of a felony and for committing a homicide in the presence of a child.[1]

The jury trial was held on March 14–17, 2022, and the State presented the following testimony and evidence in support of the charges. On June 27, 2020, Lane, whom Tucker referred to as his uncle, had a party at his home. Tucker, who lived in Missouri, had been staying with Lane and was present at the party. Other guests included Shalamar Ford, Joyce Adams, Virginia Bailey, and Darnell Wilson; Terry Rogers and his wife, Robin Rogers; Lane's one-year-old daughter; and Bailey and Wilson's infant. At some point during the evening, Bailey and Wilson were involved in an argument outside the residence. Other guests went outside to check on them, while Lane, Tucker, Adams, and the children remained inside. Robin Rogers walked to the front door to go back inside and grab her cigarettes when Tucker came to the door and pushed her backward, stating, "[T]hese bitches are out to get me." Lane told Tucker to "stop tripping," and Tucker shot him. Despite pleas

---

[1]Tucker was also charged with being a felon in possession of a firearm; however, this charge was severed by the circuit court.

by Adams, who was holding Bailey and Wilson's infant, not to shoot her, Tucker shot her as well. Tucker then retrieved a second gun. Wilson and Ford ran to the front door. Tucker shot toward Ford's face but missed her. He then shot Wilson twice, hitting him once in the stomach. Bailey carefully approached the house with her hands up, yelling, "My baby is in there," and Tucker shot her. Next, Tucker went outside and shot at Terry Rogers, who had taken cover at the side of the house. Tucker then took Ford's car and fled to Missouri. Three firearms were found in the car when Tucker was apprehended. The State's firearms expert testified that the bullets from two of the victims' bodies matched two of the firearms in Tucker's possession. Adams's blood was found on Tucker's pants, and his shirt and pants tested positive for gunshot residue. The State also played surveillance video from a residence across the street from Lane's home.

Tucker testified in his own defense. He stated that he believed people were following him, that he had witnessed an altercation at the party and saw someone with a gun, and that he believed people at the house wanted to kill him. He further explained that he had not slept in ten or eleven days and was impaired that night. Tucker admitted that he had shot people but claimed that he had feared for his life, that he was trying to get out of the house, and that he did not intend to kill anyone. He testified that the surveillance video had been edited by police and did not accurately reflect what occurred that night.

At the conclusion of the trial, the jury found Tucker guilty of all charges, including the enhancements. He was sentenced as a habitual offender to life imprisonment for each count of first-degree murder, twenty years' imprisonment for the first-degree battery conviction, ten years' imprisonment for each count of aggravated assault, fifteen years'

3

imprisonment for use of a firearm in the commission of one count of murder, and ten years' imprisonment for committing one murder in the presence of a child.[2] The jury recommended that all sentences be served consecutively, and the circuit court followed that recommendation. The sentencing order was entered on March 17, 2022, and Tucker filed a timely notice of appeal.

Although it is presented as his third point on appeal, we address Tucker's challenge to the sufficiency of the evidence supporting one of his aggravated-assault convictions first due to double-jeopardy considerations. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. Tucker contends that the circuit court erred by denying his motion for directed verdict on count six, the aggravated assault against Terry Rogers, because the State failed to plead that Rogers was the victim of the offense. He argues that the failure to name Rogers as the victim in the criminal information did not sufficiently apprise him of the crime for which he was charged and violated his constitutional rights as secured by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, as well as article 2, sections 8 and 10 of the Arkansas Constitution.

Although Tucker frames his argument as a challenge to the sufficiency of the evidence, he does not contend that the State failed to prove any of the elements of the offense. Rather, he is challenging the sufficiency of the criminal information with regard to this count. However, he failed to raise this issue in a timely manner. We have held that a nonjurisdictional challenge to the sufficiency of the information must be raised prior to trial

---

[2]These two sentence enhancements were applied to only one of the first-degree-murder charges.

to be preserved for appellate review, and a directed-verdict motion is not a substitute for a timely motion to dismiss an allegedly insufficient information. *E.g.*, *Ray v. State*, 344 Ark. 136, 40 S.W.3d 243 (2001). Tucker did not argue that the charging instrument was defective until his trial, when he moved for directed verdict at the close of the State's case. As the circuit court noted in denying his motion, Tucker could have filed a bill of particulars prior to trial if he desired additional information not provided in the amended criminal information, such as the name of the victim. *See Lockhart v. State*, 2017 Ark. 13, 508 S.W.3d 869 (holding that the criminal information sufficiently apprised the defendant of the specific elements of the crime with which he was being charged and the date that he was alleged to have committed it and that the defendant could have filed a bill of particulars if he wanted additional information). He failed to do so. Accordingly, because Tucker did not preserve his argument for appeal, we are unable to address the merits.

Tucker next contends that the circuit court impermissibly stacked sentencing enhancements. During the penalty phase of the trial, Tucker requested that the circuit court apply the sentence enhancements for committing a homicide in the presence of a child and for using a firearm during the commission of a felony concurrently instead of "stacking" them, or running them consecutively. He claimed that the statutes authorizing these enhancements are ambiguous in this regard and should therefore be construed in his favor. The circuit court disagreed with Tucker's argument and ruled that the enhancements were to run consecutively.

Issues of statutory construction are reviewed de novo, as it is for this court to decide the meaning of a statute. *State v. Ledwell*, 2017 Ark. 252, 536 S.W.3d 1. Criminal statutes

5

are construed strictly, and any doubts are resolved in favor of the defendant. *Id*. The primary rule of statutory interpretation is to give effect to the intent of the legislature. *Metzner v. State*, 2015 Ark. 222, 462 S.W.3d 650. We construe the statute just as it reads; if the language of the statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation. *Id*.

Pursuant to Arkansas Code Annotated section 16-90-120(a) (Supp. 2019), any person convicted of a felony who employs a firearm as a means of committing the felony may be subjected to an additional period of confinement for a period not to exceed fifteen years. Any additional prison sentence imposed under this section "shall run consecutively and not concurrently with any period of confinement imposed for conviction of the felony itself." Ark. Code Ann. § 16-90-120(b). In addition, Arkansas Code Annotated section 5-4-702(a)(2) (Supp. 2019) provides that a person who commits first-degree murder in the presence of a child may be subject to an enhanced sentence of an additional term of imprisonment of not less than one year and not greater than ten years. The enhanced portion of this sentence "is consecutive to any other sentence imposed." Ark. Code Ann. § 5-4-702(d).

Tucker contends that a plain reading of these statutes reveals an ambiguity because it is unclear whether the sentencing enhancements must run consecutively to all other sentences imposed or merely consecutively to the underlying felony for which the sentence was enhanced. He further argues that the sentencing order in this case is ambiguous as to the sequence of these enhancements. He claims that these ambiguities must be resolved in

his favor and that these sentence enhancements should run consecutively to one of the life sentences but concurrently with each other.

We disagree with Tucker's claim that these statutory provisions are ambiguous. Section 16-90-120(b) clearly requires that any sentence enhancement for use of a firearm shall run consecutively to the sentence imposed for the felony itself, and section 5-4-702(d) requires that the enhancement run consecutively to *any other sentence* imposed. Thus, the circuit court correctly imposed an additional fifteen-year sentence to one of Tucker's life sentences for his use of a firearm and then imposed the ten-year enhancement for committing the murder in the presence of a child—to be served consecutively to that resulting sentence—and the sentencing order accurately reflects this. Accordingly, Tucker's contention that his sentence is illegal based on the stacking of these enhancements is without merit.

Tucker also argues that a general sentencing enhancement such as the habitual-offender statute may not be stacked on top of the specific sentence enhancements.[3] He relies on *Lawson v. State*, 295 Ark. 37, 746 S.W.2d 544 (1988), in which this court held that the general habitual-offender statute could not be stacked with a specific DWI enhancement statute applicable to a fourth DWI offense. We concluded that the legislature did not intend the specific DWI enhancement statute to be coupled with the general criminal-enhancement statute for the resulting purpose of creating a greater sentence than if either statute had been applied singly. *Id.* Tucker contends that, because all of his sentences were

---

[3]Tucker did not make this specific argument below; however, we have held that illegal-sentence claims can be raised for the first time on appeal. *E.g.*, *Ellis v. State*, 2019 Ark. 286, 585 S.W.3d 661.

ordered to run consecutively, there is no way to distinguish the specific enhancements applicable to the one count of first-degree murder from the general habitual-offender enhancement that applied to all of the charges. He claims that "[t]his is implicitly enlarging the punishment for one count of battery in the first degree and two counts of aggravated assault to an extent greater than that contemplated by the legislature."

As the State argues, *Lawson* is not applicable to this case, as it did not involve either section 5-4-702 or section 16-90-120, neither of which is a subsequent-offense enhancement. Tucker cites no authority that prevents these enhancements from being stacked with the general habitual-offender statute. In addition, his contention that his punishment for the first-degree-battery and aggravated-assault convictions was implicitly enlarged by the firearm and presence-of-a-child enhancements is simply incorrect. These enhancements were applied only to the one count of first-degree murder—not to any of the other charged offenses. Thus, we affirm on this point.

In his next point on appeal, Tucker argues that the circuit court erroneously excluded hearsay testimony by Shalamar Ford, who was Lane's girlfriend. During the defense's cross-examination of Ford, Ford indicated that Tucker was "acting weird" at the time of the murders. The defense then asked if Lane had told her that he thought Tucker "got hold of some bad powder." The State objected on the basis of hearsay, and the defense argued that the statement was admissible as a present-sense impression. The defense also contended that the testimony was more probative than prejudicial. The circuit court agreed with the State that the testimony did not fall within the present-sense-impression exception to hearsay and sustained the objection. The court also noted that several people had indicated that Tucker

was not in his right mind and that it was prejudicial to let the statement in because Lane did not know what type of substance Tucker had taken, if anything.

Pursuant to Ark. R. Evid. 801(c) (2022), hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Hearsay is inadmissible except as provided by law or the rules of evidence. Ark. R. Evid. 802 (2022). The present-sense-impression exception allows a statement that describes or explains an event or condition made while the declarant is perceiving the event or condition, or immediately thereafter. Ark. R. Evid. 803(1) (2022). A circuit court has broad discretion in deciding evidentiary issues, and we will not reverse that decision absent an abuse of discretion. *Humphry v. State*, 2023 Ark. 16, 659 S.W.3d 691. In addition, we will not reverse unless the appellant demonstrates that he or she was prejudiced by the ruling. *Id*.

Tucker contends that the circuit court committed reversible error by excluding Ford's testimony as hearsay because the statement fits squarely under both the res gestae exception and the present-sense-impression exception. Tucker raises his argument regarding the res gestae exception for the first time on appeal; therefore, it is not preserved for our review. *E.g.*, *King v. State*, 2019 Ark. 114, 571 S.W.3d 476. Tucker claims that the issue was sufficiently raised when he asserted at trial that the statement was more probative than prejudicial, but that argument related to whether evidence that is otherwise admissible should be excluded pursuant to Ark. R. Evid. 403, not whether the evidence was admissible as res gestae. We have held that under the doctrine of res gestae, evidence showing all of the circumstances surrounding the charged act may be introduced to provide context for

9

the crime and to place the jury in possession of the entire transaction. *Adams v. State*, 2021 Ark. 34, 617 S.W.3d 249. Because Tucker did not make this specific argument at trial, however, we are unable to address it.

We also agree with the State that the circuit court did not abuse its discretion by concluding that the hearsay statement at issue did not fall within the present-sense-impression exception. Lane's comment to Ford that Tucker may have taken some bad powder was an opinion about why Tucker had been behaving strangely that evening, not a statement based on his perception of Tucker made contemporaneously with the event. Tucker also cannot demonstrate prejudice from the exclusion of this evidence. Not only was there an abundance of other evidence admitted regarding Tucker's abnormal mental state, but the jury was also instructed that voluntary intoxication is not a defense to a crime. Tucker admitted that he was "under the influence" that night. We therefore affirm on this point as well.

In Tucker's fourth and final point on appeal, he contends that the circuit court erred by refusing to give his proffered jury instruction on reckless manslaughter. The State agreed to instruct the jury on the lesser-included offense of second-degree murder but argued that there was no rational basis for giving the manslaughter instruction. The circuit court agreed. Tucker then proffered his instructions on each of the three murder counts. The proffered manslaughter instructions provided that Tucker "recklessly caused the death" of each murder victim. *See* AMI Crim. 2d 1004; *see also* Ark. Code Ann. § 5-10-104(a)(3) (Repl. 2013) (containing the elements of the manslaughter offense). The instructions further defined "recklessly" and stated that "[a] person acts recklessly with respect to the results of

his conduct when he consciously disregards a substantial and unjustifiable risk that the results will occur. The risk must be of a nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the same situation." *See* AMI Crim. 2d 1004; *see also* Ark. Code Ann. § 5-2-202(3)(A) (Repl. 2013) (containing the definition of "recklessly").

A circuit court's ruling on whether to give a jury instruction will not be reversed absent an abuse of discretion. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491; *Dixon v. State*, 2019 Ark. 245, 581 S.W.3d 505. The refusal to give an instruction on a lesser-included offense is reversible error if the instruction is supported by even the slightest evidence. *Armstrong*, *supra*. However, we will affirm the circuit court's decision to not give an instruction on a lesser-included offense if there is no rational basis for doing so. *Id*.

Tucker claims that he was entitled to the manslaughter instruction because the jury could have reasonably concluded from the evidence presented that he believed that deadly force was necessary to defend himself but that this belief was formed recklessly. He refers to his testimony that he had been awake for eleven days, that he believed someone from Missouri was following him and trying to kill him, that he witnessed an altercation at the party, that he saw someone with a gun, and that he was in fear for his life. Tucker relies on *Harshaw v. State*, 344 Ark. 129, 39 S.W.3d 753 (2001), wherein we reversed the circuit court's refusal to instruct the jury on manslaughter as a lesser-included offense to second-degree murder. In *Harshaw*, witnesses testified that the victim made threatening remarks to the defendant and reached for something in his car immediately prior to the homicide. *Id*. We held that there was at least some evidence presented to support a finding that the

11

defendant acted on the basis of an unreasonable or recklessly formed belief that he needed to use deadly force to protect himself. *Id.*

The facts in the present case are clearly distinguishable from those in *Harshaw*. While Tucker testified that he began shooting because he was paranoid and afraid for his life, no evidence was presented that the victims, or anyone else at the party, had threatened him or had any sort of conflict with him. Tucker stated that he was not aware that he had shot his uncle, Lane, until afterward and that he did not know any of the other victims. According to Tucker's testimony, as well as that of other witnesses, the altercation at the party was a domestic dispute that did not involve Tucker. Although Tucker stated that he saw someone with a gun, he did not indicate that it was ever pointed at him. Instead, the witnesses testified that Tucker shot Lane after Lane attempted to calm him down, that he shot Adams while she was holding an infant and begging for her life, that he picked up a second gun and fired at both Ford and Wilson, and that he then shot Bailey when she approached the house with her hands raised, worried about her child who was inside. The surveillance-video footage played at trial shows that Bailey had her hands in the air when Tucker fatally shot her. This evidence demonstrated that Tucker deliberately and repeatedly fired at multiple victims, none of whom posed a threat to Tucker, resulting in the deaths of two parents of young children who were present during these horrific events. Under these circumstances, the circuit court did not abuse its discretion in finding no rational basis for giving the reckless-manslaughter instruction. *See, e.g.*, *Morris v. State*, 351 Ark. 426, 94 S.W.3d 913 (2003) (affirming circuit court's conclusion that no rational basis existed for giving reckless-manslaughter instruction where there had previously been an argument in the nightclub

parking lot, a car window was rolled down, and the defendant thought he saw a gun); *Ellis v. State*, 345 Ark. 415, 47 S.W.3d 259 (2001) (affirming denial of reckless-manslaughter instruction where the defendant shot the victim at close range after the victim stared at the defendant during a confrontation).

*Rule 4-3(a) Review*

Because Tucker received a life sentence, the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Tucker in compliance with Arkansas Supreme Court Rule 4–3(a), and no prejudicial error has been found.

Affirmed.

*Thompson & Holmes*, by: *Jake Holmes*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.