Cite as 2025 Ark. 210

# SUPREME COURT OF ARKANSAS
**No.** CR-24-282

| | | |
|---|---|---|
| MINOR CHILD | | **Opinion Delivered:** December 11, 2025 |
| | APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63JV-23-24] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE BRENT HOUSTON, JUDGE |
| | APPELLEE | AFFIRMED. |

**NICHOLAS J. BRONNI, Associate Justice**

Minor Child appeals the Saline County Circuit Court's order finding him delinquent for committing second-degree sexual assault. His victim was just five years old at the time of the attack. MC argues that there was insufficient evidence to support the circuit court's delinquency finding and that the circuit court erred in admitting a recorded interview between the victim and a forensic nurse. We reject both arguments and affirm the circuit court's adjudication.

## Facts and Procedural Background

The facts of this case are disturbing, and we recount only those necessary to resolve this matter. MC is a teenager, and the then-five-year-old victim's half-uncle. On Thanksgiving Day 2022, MC was staying with the victim's family. That morning, the victim woke up early, went to her parents' bedroom, and then to the living room. There the victim discovered MC on the couch, and thinking he was asleep, she joined him. But MC was not asleep, and as the victim and MC lay on the couch, MC "put his finger in"

the victim's rectum.  Feeling "sad and mad," the victim "scooted up" to see if that "would help" her discomfort.  It did not.  MC then digitally penetrated the victim "one more time."  He stopped when the victim's mother entered the room.

Later that day, the victim's father took MC home, and the victim and her family left to celebrate Thanksgiving with extended family.  When they returned home that evening, the victim told her father that she did not like how MC had touched her earlier that day.  Immediately recognizing that something was wrong, the victim's father called her mother into the room, and the victim told them what had happened to her.

The victim's father contacted the police and took the victim to the hospital.  There, Kya Jones, a sexual-assault nurse examiner, examined the victim.  Jones could not draw any conclusions purely on the basis of her physical observations.  But she collected the victim's underwear and two rectal swabs—one "around the entry" and one "inside of the entryway"—for DNA testing.  Both the underwear and the swabs indicated the presence of male DNA, though there was not enough DNA to build a contributor profile and identify the source.  About a week later, the victim was interviewed by a forensic nurse.  She recounted the details of her assault, and the roughly 45-minute interview was recorded.

Thereafter, the State filed a petition with the Circuit Court of Saline County – Juvenile Division alleging that MC had committed second-degree sexual assault and asking the circuit court to find MC delinquent.  A bench trial followed, and during the trial, the victim testified that MC "put his finger in" her "butthole," described how that made her feel, and explained her attempt to scoot away.

On cross-examination, MC sought to impeach the victim using alleged prior inconsistent statements from her recorded forensic interview. But rather than directly confront her with those statements, MC suggested simply playing the relevant portions of the interview for the circuit court without the victim present. MC argued that would avoid further distressing the victim who already appeared "extremely distraught." All total, defense counsel suggested playing roughly one-third of the recorded interview, spread across sixteen different intervals. The State objected and argued that the entire video should be admitted under Ark. R. Evid. 803(25), Arkansas's special rule governing the admission of prior inconsistent statements by young children. MC responded that he was not relying on Rule 803(25) and said that, if necessary, he would follow the normal impeachment rules and confront the victim with her prior statements. The State responded that, under Rule 803(25), it was entitled to admit the full recording.

The circuit court then reviewed the full recording in camera and concluded that the entire recording was admissible. In so doing, it held, as MC argued, that the victim had made inconsistent statements about whether MC had kissed her and covered her with a blanket during the assault. It also concluded that the State had provided reasonable notice that it intended to admit the recording and that the recording bore sufficient guarantees of trustworthiness. And on that basis, it admitted the recording under Rule 803(25).

After the victim testified, the State presented additional testimony from the victim's parents, Jones, and Christopher Glaze, the State's DNA expert. The victim's parents generally corroborated her account and confirmed that the victim had told them about the assault on Thanksgiving Day. Jones testified that, although she found no physical evidence

that the victim had been digitally penetrated, "it would be perfectly normal" for a victim to be digitally penetrated and for there to be no observable findings. Glaze testified that the rectal swabs and victim's underwear both contained male DNA, though not enough to build a contributor profile.

At the close of the State's case, MC moved to dismiss the petition. The circuit court denied that motion. MC then testified and denied that he had attacked the victim. After the defense rested, MC renewed the motion to dismiss, and the court again denied it.

Following closing arguments, the circuit court adjudicated MC delinquent. It found the victim "very credible" and concluded that the victim had provided a "believable" and "consistent story." It found true the State's allegation that MC had committed second-degree sexual assault. This appeal followed.

## Discussion

MC challenges his delinquency adjudication on two grounds. First, he argues that the evidence supporting his conviction was legally insufficient. Second, he argues that the circuit court abused its discretion when it admitted the entire recording of the victim's forensic interview. We reject both challenges; hold that substantial evidence supports MC's adjudication; and hold that the circuit court did not abuse its discretion in admitting the full recording of the victim's interview.

### Sufficiency Challenge

MC argues that his conviction is not supported by sufficient evidence because: (1) DNA testing did not confirm his DNA was found on the victim; (2) Jones, the sexual-assault

4

nurse examiner, testified that she did not observe any physical findings of abuse; and (3) the victim's testimony contained inconsistencies. MC's arguments badly miss the mark.

The State's burden of proof in a delinquency proceeding is the same as in an ordinary criminal trial—that is, it must prove "beyond a reasonable doubt" that the juvenile committed the alleged offense. Ark. Code Ann. § 9-35-419(h)(2)(A)(i) (Supp. 2025); *see also In re Winship*, 397 U.S. 358, 368 (1970) ("[T]he constitutional safeguard of proof beyond a reasonable doubt is as much required during the adjudicatory stage of a delinquency proceeding."). Likewise, when a juvenile challenges the sufficiency of the evidence, we apply the ordinary criminal-sufficiency standard and ask whether the adjudication is supported by substantial evidence. *S.C. v. State*, 2015 Ark. App. 344, at 5, 464 S.W.3d 477, 479. In so doing, as in other cases, we preserve the fact-finder's role in weighing the evidence and view the evidence in the light most favorable to the adjudication. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *McDaniels v. State*, 2025 Ark. 139, at 8, 720 S.W.3d 82, 88.

Conducting that review, we conclude that substantial evidence supports the circuit court's delinquency adjudication. As relevant here, to sustain a second-degree sexual-assault adjudication, the State had to prove that MC engaged in "[a]n act of sexual gratification involving the touching . . . of the . . . buttocks[] or anus of a person" under fourteen. Ark. Code Ann. § 5-14-101(12) (Supp. 2021); *see* Ark. Code Ann. § 5-14-125(a)(5)(A) (Supp. 2021). The State met its burden. To start, the victim testified and described her interaction with MC and how he had inserted his finger into her rectum. The victim's parents' testimony also corroborated the timeline that the victim described, and DNA testing

5

confirmed the presence of male DNA on the victim's underwear and in her rectum. Against that backdrop, the fact-finder was entitled to conclude that MC had committed second-degree sexual assault. Indeed, our previous cases underscore that the victim's testimony alone, even if not supported by all the other evidence present here, would have been sufficient to support a delinquency adjudication. *See Breeden v. State*, 2013 Ark. 145, at 5, 427 S.W.3d 5, 8.

Nor do MC's arguments change the analysis. First, to the extent that MC relies on inconsistencies in the victim's testimony to suggest that the fact-finder could not rely on her testimony, such inconsistencies were for the fact-finder to resolve. *See McDaniels*, 2025 Ark. 139, at 8, 720 S.W.3d at 88 ("We do not second-guess the jury's credibility determinations or its resolution of conflicting evidence."). And nothing in the record here suggests that, even crediting those inconsistencies, the circuit court could not credit her testimony that she had been sexually assaulted. Second, the absence of any obvious physical signs of abuse does not undermine the adjudication because, as Jones testified, such findings are frequently lacking in cases of documented abuse. Third, the mere fact that the State could not identify MC as the source of the male DNA on the victim's underwear and on the rectal swabs likewise does not undermine the adjudication because the law does not require such a specific link. Moreover, even if it could not be directly linked to MC, the undisputed presence of male DNA in the victim's rectum supports the adjudication, and the circuit court was entitled to rely on it in adjudicating MC delinquent. So we conclude that substantial evidence supports the circuit court's finding that the State's petition was true.

MC also argues that the circuit court abused its discretion and committed reversible error by admitting the victim's entire forensic interview. We disagree. Circuit courts enjoy "broad discretion in deciding evidentiary issues," and we will find an abuse of discretion only when the court acted "improvidently, thoughtlessly, or without due consideration." *Humphry v. State*, 2023 Ark. 16, at 5, 659 S.W.3d 691, 695. And even when the circuit court relied on the wrong evidentiary rule to admit evidence, reversal is not required if the circuit court reached the correct result. *See Keesee v. State*, 2022 Ark. 68, at 13–14, 641 S.W.3d 628, 639. Applying that standard, we hold that although Rule 803(25) does not authorize the admission of the entire recording, that recording was nonetheless admissible in response to MC's attempt to impeach the victim's testimony.

A. The circuit court wrongly admitted the entire recording pursuant to Rule 803(25), Arkansas's tender-years exception. That rule permits the introduction of a "statement made by a child under the age of ten (10) years concerning any type of sexual offense . . . which is inconsistent with the child's testimony and offered in a criminal proceeding." Ark. R. Evid. 803(25). Thus, in other words, to be admissible under that rule, an offered statement must be *inconsistent* with the child's trial testimony. That was not the case here; the State did not seek to admit the entire recording because it contained inconsistent statements. Instead, it asked to admit the entire recording because it contained statements *consistent* with the victim's trial testimony. Indeed, the whole point of admitting the entire video was to counter MC's argument that the victim's trial testimony was inconsistent with her interview. But nothing in Rule 803(25)'s text authorizes the

admission of consistent statements,[1] and the circuit court could not rely on that provision to admit the recording.

B.  Yet that is not the end of the matter because, as the State argued below, there were "all kinds of ways that" the entire video could be admitted.  And here, the recording was admissible both to rehabilitate the victim's credibility and to provide necessary context.  So the circuit court ultimately did not abuse its discretion in admitting the recording.  *See Keesee*, 2022 Ark. 68, at 13–14, 641 S.W.3d at 639.

At common law, prior consistent statements were admissible to rehabilitate a witness's credibility in response to impeachment.  *Carpenter v. State*, 58 Ark. 233, 240, 24 S.W. 247, 249 (1893); *see also United States v. Begay*, 116 F.4th 795, 800 (8th Cir. 2024); *United States v. Ellis*, 121 F.3d 908, 919 (4th Cir. 1997) (collecting cases).  That is because, when used for rehabilitation, such statements are not—in the words of our rules—"offered in evidence to prove the truth of the matter asserted" and barred by the rules against hearsay.  Ark. R. Evid. 801(c); *see also United States v. Rubin*, 609 F.2d 51, 69 (2d Cir. 1979) (Friendly, J., concurring).  On the contrary, such statements can provide important context, better enabling the fact-finder to fully assess any alleged inconsistencies.  *See Cooper v. State*, 317 Ark. 485, 489–90, 879 S.W.2d 405, 407 (1994) (fairness permitted further inquiry "to clarify

---

[1]Underscoring the point, similar tender-years provisions around the country do not contain language—like the provision at issue here—limiting the admission of out-of-court statements to inconsistent statements.  *See* Ala. Code § 12-15-310(c); Alaska R. Evid. 801(3); Conn. Code Evid. Sec. 8-10; Kan. Stat. Ann. § 38-2249; Ohio Evid. R. 807; 42 Pa. Stat. and Cons. Stat. Ann. § 5985.1; S.C. Code Ann. § 19-1-180; S.D. Codified Laws § 19-19-806.1; Tenn. Code Ann. § 24-7-101; Tex. Fam. Code Ann. § 104.006; Utah R. Crim. P. 15.5; Vt. R. Evid. 804A; Va. Code Ann. § 63.2-1522.

any confusion or misapprehension" left by the defense's cross-examination of a minor victim); *Doucoure v. State*, 2024 Ark. 162, at 5–6, 698 S.W.3d 643, 646 (Wood, J., concurring) ("This rule of 'verbal completeness' allows the jury to hear potentially inadmissible evidence to explain earlier testimony or to avoid misleading them."); Ark. R. Evid. 106 (permitting admission of "any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously"); *see also United States v. Pierre*, 781 F.2d 329, 333 (2d Cir. 1986) ("It matters not whether such use is deemed a permissible type of rehabilitation or only an invocation of the principle of completeness.").

Thus, as we have previously noted, while prior consistent statements are not admissible to simply "corroborate or sustain [any] testimony given in court," the calculation is different when their use directly responds to an attack on a witness's credibility. *See George*, 270 Ark. at 337–38, 604 S.W.2d at 942. And that principle is particularly relevant where, like here, a child's credibility is attacked. *See Cooper*, 317 Ark. at 489–90, 879 S.W.2d at 407; *United States v. Spotted Bear*, 920 F.3d 1199, 1201–02 (8th Cir. 2019) (noting the defendant could not "complain about" the admission of a minor's recorded forensic interview when he "opened the door" to its admission); *State v. Flores*, 2 N.W.3d 287, 290 (Iowa 2024) (affirming admission of entire recorded forensic interview where the "defense extensively cross-examined the child by asking her about specific statements she made during her forensic interview"); *People v. Eppens*, 979 P.2d 14, 22 (Colo. 1999) (permitting prior consistent statements to rehabilitate child witness); *Moreland v. State*, 701 N.E.2d 288, 293 (Ind. Ct. App. 1998) (same); *State v. Church*, 708 A.2d 1341, 1342 (Vt. 1998) ("Th[e] rationale [for rehabilitating with prior consistent statements] applies with particular force in

cases where the complaining witness is a child and where the issue of credibility is especially acute.").

To be sure, that does not mean that a circuit court must automatically admit prior consistent statements whenever a child witness has been impeached with prior inconsistent statements. Instead, context matters, and circuit courts should consider things like the victim's age and maturity as well as the background of the previous consistent statements in making that determination. *See George*, 270 Ark. at 339, 604 S.W.2d at 943 (explaining "the omitted portion of the statement" must be "explanatory of the part referred to on cross-examination"). Nor for that matter does it mean that parties may freely introduce entire recordings. Rather, as is always true, parties should be "prepared to limit [the] video played . . . to those portions necessary for context, fairness, or to otherwise clear up misleading impressions." *Flores*, 2 N.W.3d at 295.

Applying those principles here, the State was entitled to introduce the entire recording. MC sought to play approximately one-third of the recording, spliced into sixteen different segments, and thereby create an incomplete and potentially misleading account of the victim's interview. Indeed, MC made those segments the focus of his defense, arguing in closing that the recording showed how the victim had been coached, "just made up" the attack or, at minimum, was "confused about what happened." The State was entitled to counter that attack on the victim's veracity by playing the full recording and allowing the circuit court to draw its own conclusions about any alleged inconsistencies. *See Cooper*, 317 Ark. at 489–90, 879 S.W.2d at 407. Moreover, the circuit court was entitled to rely on the full context for those statements in evaluating the victim's testimony. And the record

10

demonstrates that is how the circuit court used the recording here, finding that—despite her age—the victim "understood what she was talking about then, as she does today," that she did not appear coached, and that she had told a "very credible story, a believable story, and a consistent story."

We thus conclude there was nothing ultimately improper about the admission of the full recorded interview.

Affirmed.

Special Justice TROY BRASWELL joins.

BAKER, C.J., and HUDSON, J., concur.

WEBB, J., not participating.

**KAREN R. BAKER, Chief Justice, concurring.** While I agree with the majority's decision to affirm, I write separately for two reasons. First, I must point out that the majority recites an incomplete sufficiency of the evidence standard. The majority cites *McDaniels v. State*, 2025 Ark. 139, at 8, 720 S.W.3d 82, 88—which was handed down less than three months ago—for the following standard: "[W]e . . . view *the evidence* in the light most favorable to the adjudication." (Emphasis added.) However, *McDaniels* states that "we 'view[] the evidence in the light most favorable to the State' and *may only consider evidence supporting the verdict*." *Id*. at 8, 720 S.W.3d at 88 (emphasis added). Thus, as I explained in my concurrence in *Matthews v. State*, 2025 Ark. 213, the majority's recitation of this court's standard in the present case is incomplete.

Second, I would employ a different analysis when considering the admission of MC's recorded forensic interview. I agree that the circuit court erred when it admitted the entire

recording pursuant to Arkansas Rule of Evidence 803(25). However, I disagree with the majority's decision to consider whether the recording was admissible to rehabilitate MC's credibility and to provide necessary context. We have been resolute in stating that we will not make an argument for a party or raise an issue sua sponte unless it involves the circuit court's subject-matter jurisdiction, which we will raise on our own. *Keesee v. State*, 2022 Ark. 68, at 24, 641 S.W.3d 628, 644 (Baker, J., dissenting) (citing *Sullivan v. State*, 2012 Ark. 178, at 5; *see also City of Little Rock v. Cir. Ct. of Pulaski Cty.*, 2017 Ark. 219, at 5, 521 S.W.3d 113, 116)). I would instead analyze the facts of the case within the framework of the arguments presented by the parties on appeal. On appeal, the State argues that even if the circuit court abused its discretion, MC cannot prevail because he cannot show prejudice. I agree. This court will not reverse an evidentiary decision by the circuit court in the absence of prejudice. *Conte v. State*, 2015 Ark. 220, at 32, 463 S.W.3d 686, 705. Prejudice cannot be demonstrated when erroneously admitted evidence is merely cumulative to other evidence that is properly admitted. *Lard v. State*, 2014 Ark. 1, at 16, 431 S.W.3d 249, 263. Here, both the victim and her parents testified at the hearing as to the same statements she made in the interview; therefore, the evidence was merely cumulative, and MC could not demonstrate prejudice. Accordingly, I concur with the majority's decision to affirm the circuit court's adjudication.

HUDSON, J., joins in part.

**COURTNEY RAE HUDSON, Justice, concurring**. Because appellant cannot demonstrate prejudice from the admission of the victim's entire recorded forensic interview,

12

I would affirm the circuit court's ruling on that basis. Accordingly, I agree with Chief Justice Baker's analysis of that issue, and I join that portion of her concurrence.

*Sharon Kiel*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.