COURTNEY HUDSON GOODSON, Associate Justice |tIn a bench trial, the Circuit Court of Benton County found appellant Ernie Charles Metzner guilty of driving while intoxicated, second offense, and guilty of violating the implied-consent law. As a consequence, the circuit court sentenced him to thirty days in jail with twenty-three days suspended and fined him $750, plus court costs. In addition, the court ordered Metzner to comply with Level II Decision Point recommendations. For reversal, Metzner argues that the circuit court erred in denying his motion to suppress the results of a blood-alcohol test taken pursuant to a search warrant, contending that the implied-consent statutes prohibit the issuance of a warrant to obtain a chemical test. This court affirms Metzner’s conviction and sentence. The record reflects that on March 16, 2013, Deputy Lynn Hahn of the Benton County Sheriffs Office conducted a sobriety checkpoint at 54th Street and Stoney Brook Road in Rogers, Arkansas. During the course of his duties, Hahn arrested Metzner for driving while | gintoxicated and transported him to the Bentonville Police Department for a breath-alcohol test. Metzner refused to submit to the test. Hahn then applied .for and obtained a search warrant for the collection of a sample of Metzner’s blood for testing. Under the authority of the warrant, Hahn took Metzner to Northwest Medical Center for the extraction of Metzner’s blood. The result of the test showed a blood-alcohol content of .15%. Prior to trial, Metzner moved to suppress the result of the blood test. He argued that the implied-consent law prohibits the taking of a blood sample pursuant to a search warrant when an accused refuses to take.a chemical test requested by a law enforcement officer. In response, the State asserted that the evidence obtained as a result of the search warrant was not seized in violation of the implied-consent statutes and that the seizure did not otherwise offend Metzner’s rights guaranteed by the Fourth Amendment to the United States Constitution. The parties briefed the issue and argued their positions at a hearing. The circuit court subsequently entered an order denying the motion to suppress. After reviewing the relevant law, the circuit court concluded that the General Assembly did-not intend to prohibit all possible chemical testing after an accused refuses a chemical test and did not intend to afford greater rights to a drunk driver than is constitutionally required. With that ruling, the case proceeded to trial. Metzner waived his right to be tried before a jury. At the bench trial, the State introduced into evidence the result of the blood test and presented the testimony of Deputy Hahn. Hahn testified that at 2:45 a.m., Metzner approached the checkpoint driving a Ford Mustang and that Metzner stopped the vehicle approximately 150 feet short of the roadblock. Hahn motioned the vehicle to move forward, |sand when Metzner rolled down the window, Hahn detected the odor of intoxicants and cologne, and he saw a bottle of cologne on the passenger seat of the car. Hahn testified that, based on his experience as an officer, cologne is typically used to mask the odor of alcohol or drugs. Hahn further testified that he advised Metzner that he could smell the odor of intoxicants but that Metzner denied that he had been drinking. Hahn then asked Metzner to drive the vehicle to the curb. He said that Metzner stopped well short of the curb, such that the vehicle was blocking the street. Hahn asked Metzner to reposition the vehicle. He said that Metzner pulled up a little farther but that the vehicle remained several feet away from the curb. Hahn testified that he approached Metz-ner again and noticed that his eyes were bloodshot and watery. Metzner refused Hahn’s request to take a portable breath test, and he also initially declined Hahn’s command to exit the car. After Metzner agreed to step out of the vehicle, he used the door to hoist himself out of the car. Hahn stated that Metzner was hanging onto the door for balance until he had Metzner close the door. Hahn then asked Metzner to walk to the front of the vehicle. Hahn testified that Metzner displayed poor balance and that he used his right hand to steady himself while walking to the front of the vehicle. Hahn stated that, while standing at the front of the vehicle, Metzner was swaying in a circular motion. Metzner again denied that he had been drinking and refused to perform any field-sobriety tests. Hahn testified that he placed Metzner under arrest for driving while intoxicated based on Metzner’s driving, his failure to properly park, the odor of intoxicants, his bloodshot and watery eyes, along with his swaying and poor balance. | ¿Hahn further testified that he had to hold onto Metzner’s ai-m when walking him to the patrol ear out of fear that Metzner might fall. Hahn also moved Metzner’s vehicle out of the lane of traffic because it was still blocking the roadway. During the inventory of Metzner’s vehicle, Hahn found a cool beer bottle with liquid in it. Hahn stated that he advised Metz-ner of his rights under the implied-consent law and that Metzner did not respond to the question whether he would take a breath test. Hahn testified that, at the police station, Metzner stumbled over his own feet while walking on a smooth floor. He said that he had to -hold onto Metzner to keep him from falling as they proceeded to the room where the intoximeter was located. Finally, Hahn stated that Metz-ner refused to take the breath test because he would not respond to the request to take the test. Based on Hahn’s testimony, the circuit court found Metzner guilty of driving while intoxicated, second offense, and of refusal to submit. The circuit court entered its sentencing order reflecting the court’s findings and sentence on June 19, 2014. This appeal followed. As his sole issue on appeal, Metzner contends that the circuit court erred by denying his motion to suppress the results of the blood-alcohol test. He argues that, according to Arkansas Code Annotated section 5-65-205(a) (Repl. 2005), when a person under arrest refuses a law enforcement officer’s request to submit to a chemical test, the statute provides that “no chemical test shall be given.” Metzner asserts that this language prohibits the issuance of a warrant to collect a blood sample for testing. In opposition to this argument, the State asserts that the implied-consent laws authorize warrantless-searches based on implied consent and that the statute proscribes only the war-rantless search when an accused refuses to ^submit to a chemical test at the request of a law enforcement officer. Further, the State contends that, because the statute addresses only the issue of implied consent and warrantless searches, it cannot effectively be argued that the statute contains a prohibition against chemical testing pursuant to a valid search warrant. We begin by recounting a few basic principles. The collection and testing of a person’s blood, breath, or urine constitutes a search under the Fourth Amendment to the United State’s Constitution, requiring a warrant or an exception to the warrant requirement. Skinner v. Ry. Labor Execs.’ Ass’n, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); see also Hoyle v. State, 371 Ark. 495, 268 S.W.3d 313 (2007). A warrantless search or seizure is per se unreasonable, unless it falls under a recognized exception to the warrant requirement. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); McDonald v. State, 354 Ark. 216, 119 S.W.3d 41 (2003). In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Supreme Court applied the emergency exception based on the threatened destruction of evidence to hold that the warrantless seizure of a blood sample for blood-alcohol testing while the accused was receiving treatment for injuries sustained in a car accident was justified under those circumstances. However, the Court subsequently refined its holding to Schmerber by observing that, “[i]n those drunk driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so.” Missouri v. McNeely, - U.S. -, 133 S.Ct. 1552, 1561, 185 L.Ed.2d 696 (2013). Another established exception to the warrant requirement is a search that is based on consent. State v. Brown, 356 Ark. 460, 156 S.W.3d 722 (2004); Hamm v. State, 296 Ark. 385, 757 S.W.2d 932 (1988). The Arkansas implied-consent laws are based on this exception, as they are founded on the principle that “[a]ny person who operates a motor vehicle or is in actual physical control of á motor vehicle in this state is deemed to have given consent ... to a chemical test of his or her blood, breath, or urine for the purpose of determining the alcohol or controlled substance content of his or her breath or blood.” Ark.Code Ann. § 5-65-202(a) (Repl. 2005). We have observed that the intent of the General Assembly in passing these laws was to mandate alcohol testing for a person stopped by a law enforcement officer when an officer has reasonable cause to believe that the driver is'intoxicated. See Parsons v. State, 313 Ark. 224, 853 S.W.2d 276 (1993). Our implied-consent law also recognizes the right of a person to withdraw this consent. “If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test designated by the law enforcement agency, as provided in § 5-65-202, no chemical test shall be given.” Ark.Code Ann. § 5-65-205(a) (emphasis supplied). The penalty imposed for refusing to take the chemical test at the direction of a law enforcement officer is the suspension or revocation of the arrested person’s driving privilege. Ark.Code Ann. § 5-65-205(b). In addition, this court has held that evidence of an accused’s refusal to submit to a chemical test can be properly admitted as circumstantial evidence showing a knowledge or consciousness of guilt. Medlock v. State, 332 Ark. 106, 964 S.W.2d 196 (1998) (citing Spicer v. State, 32 Ark. App. 209, 799 S.W.2d 562 (1990)). The question raised in this appeal is-an issue of first impression in Arkansas. States with similarly worded implied-consent statutes are divided on the question whether the language, 17stating essentially that “no test shall be given,” when the accused refuses the chemical test requested by an officer precludes the collection of a blood sample based on a search warrant. In support of his argument, Metzner relies primarily on the decision rendered by the Supreme Court of Georgia in State v. Collier, 279 Ga. 316,612 S.E.2d 281 (Ga.2005).[1] There, the statute under consideration stated that “no test shall be given” if the person under arrest refuses, upon request, to submit to a chemical test designated by a police officer. The Georgia court held that police may not use a seareh warrant to circumvent the plain statutory bar to a forced chemical test following a suspect’s refusal of the police-requested testing. In so holding, the court focused on the mandatory command reflected by the legislature’s use of the word “shall,” and reasoned that the sanctions imposed by the legislature for the refusal to submit to a chemical test did not include being compelled to submit to testing through the use of a search warrant. The Supreme Court of Iowa arrived at the same conclusion in State v. Hitchens, 294 N.W.2d 686 (Iowa 1980), as did the Alaska Supreme Court in Pena v. State, 684 P.2d 864 (Alaska 1984). Courts in other jurisdictions whose statutes contain comparable language have reached the opposite result. In State v. Stone, 229 W.Va. 271, 728 S.E.2d 155 (2012), the Supreme Court of Appeals of West Virginia construed the language of its implied-consent statute that “the tests shall not be given” upon refusal as referring only to the tests requested by law enforcement officers pursuant to the statute and held that the phrase did not restrict the State’s ability to 18seek a search warrant to obtain evidence, including blood samples, in criminal traffic offenses. In this opinion, the court overruled its previous decision holding otherwise in State v. McClead, 211 W.Va. 515, 566 S.E.2d 652 (2002). The Missouri Court of Appeals also held that its statutory command of “none shall be given” applies only to the warrantless search authorized at the direction of law enforcement officials. State v. Smith, 134 S.W.3d 35 (Mo.Ct.App.2003). The court of appeals stated, Because of the use of the passive voice in the clause “none shall be given,” that clause does not specify who is prohibited from giving a test. Accordingly, in construing this provision we must consider the context and related clauses of this statute. State v. Campbell, 564 S.W.2d 867, 869 (Mo. banc 1978). We therefore look at the context in which “none shall be given” is used to determine to whom this passive command is directed. See State ex rel. Holterman v. Patterson, 24 S.W.3d 784, 786 (Mo.App.2000). When we read Section 577.041.1 with Section 577.020.1, as we must, Eyberg v. Director of Revenue, 935 S.W.2d 376, 379 (Mo.App.1996), the only actor to whom this clause can be directed is a law enforcement officer. This is because the tests allowed pursuant to ' Section 577.020 are those “administered at the direction of the law enforcement officer.” Section 577.020.1. We have interpreted the phrase “none shall be given” to mean that a law enforcement officer is without authority to administer the test once it is refused, Blanchard v. Director of Revenue, 844 S.W.2d 589, 590 (Mo.App.1993), and our courts have held that “law enforcement officers are significantly limited” by this provision. Trumble, 844 S.W.2d at 24. To hold that this clause prohibits courts from issuing search warrants would introduce a new subject matter unrelated in kind to the remainder of the statute. See Campbell, 564 S.W.2d at 870. The command that “none shall be given” is addressed only to the authority of law enforcement officers to proceed with a warrantless test under Chapter 577. The Missouri Implied Consent Law was enacted to codify the procedures under which a law enforcement officer could obtain bodily fluids for testing by consent without a search warrant. It provides administrative and procedural remedies for refusal to comply. Because it is directed only to warrantless tests authorized by law enforcement officers, it does not restrict the state’s ability to apply for a search warrant to obtain evidence in criminal cases pursuant to section 542.276 RSMo (2000) or a court’s power to issue a search warrant under section.542.266 RSMo (2000). Smith, 134 S.W.3d at 40. In the case at bar, this court must decide whether the laws of this State prohibit an officer from obtaining a warrant once an accused declines the test requested by the officer under the implied-consent law. The issue before us is one of statutory interpretation, which is a question that we consider de novo without giving deference to the circuit court’s interpretation. See State v. Thomas, 2014 Ark. 362, 439 S.W.3d 690. We construe ci’imi-nal statutes strictly, resolving any doubts in favor of the defendant. Eli Hart v. State, 2014 Ark. 250, 2014 WL 2465343. Strict construction means narrow construction and requires that nothing be taken as intended that is not clearly expressed. May Constr. Co., Inc. v. Town Creek Constr. & Dev., LLC, 2011 Ark. 281, 383 S.W.3d 389. However, we will not interpret a statute, even a criminal one, so as to reach an absurd conclusion that is contrary to legislative intent. Walden v. State, 2014 Ark. 193, 433 S.W.3d 864. We also adhere to the basic rule of statutory construction, which is to give effect to the intent of the legislature. Eli Hart, supra. We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, and if the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation. Stivers v. State, 354 Ark. 140, 118 S.W.3d 558 (2003). In construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect derived from the whole. Walden, supra. In relevant part, section 5-65-205(a) provides, “If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test designated by the law-enforcement agency, as provided in § 5-65-202, no chemical test shall be given[.]” When viewed in isolation, the phrase “no chemical test shall be given” seemingly supports Metzner’s position that no test whatsoever may be given. However, when viewed in its proper context by considering the language preceding the phrase, it is abundantly clear that the phrase specifically refers only to the test requested by an officer pursuant to section 5-65-202, which authorizes a warrantless test based on implied consent. Therefore, construing the plain language of section 5-65-205(a) as a whole, it is apparent that the test that may not be given is limited to the warrantless test authorized by section 5-65-202. Furthermore, section 5-65-205(a) contains no language addressing the issuance of a search warrant based upon probable cause when an accused refuses the test requested by an officer. To hold that the statute, in its silence, contains a prohibition against the issuance of a search warrant would violate the canon of strict construction “that nothing can be taken as intended that is not clearly expressed.” White v. State, 260 Ark. 361, 366, 538 S.W.2d 550, 553 (1976). This court may not infer intent by adding words that are not found in the statute. Moreover, proscribing the use of a search warrant as a means of obtaining evidence of a driver’s intoxication “would be to place allegedly drunken drivers in an exalted class of criminal defendants, protected by the law from every means of obtaining the most important evidence against them.” Brown v. State, 774 N.E.2d 1001, 1007 (Ind.Ct.App.2002) (quoting Pena v. State, 684 P.2d at 869 (Compton, J., dissenting)). To interpret the statute to afford DWI suspects more protection than other criminal defendants produces an absurd result that is contrary to the plain language of the statute. See Beeman v. State, 86 S.W.3d 613 (Tex.Crim.App.2002). _[2_iMetzner’s conviction is affirmed. Affirmed. Wynne, J., concurs in part and dissents in part. Baker and Hart, JJ., dissent. . The decision in Collier was abrogated by the Georgia Legislature the following year by an amendment to Georgia’s implied-consent statute. See McAllister v. State, 325 Ga.App. 583, 754 S.E.2d 376 (2014).