Cite as 2024 Ark. 173

# SUPREME COURT OF ARKANSAS
**No.** CV-24-400

|  |  |
|---|---|
| | **Opinion Delivered:** December 12, 2024 |
| PERRY WRIGHT<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT<br>[NO. 60CV-23-8444] |
| V. | |
| ARKANSAS POST-PRISON TRANSFER BOARD; LONA MCCASTLAIN, IN HER OFFICIAL CAPACITY AS CHAIRWOMAN OF THE ARKANSAS POST-PRISON TRANSFER BOARD; ARKANSAS DIVISION OF CORRECTION; AND DEXTER PAYNE, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE ARKANSAS DIVISION OF CORRECTION<br>APPELLEES | HONORABLE PATRICIA A. JAMES, JUDGE<br><br><br>REVERSED AND REMANDED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Perry Wright appeals a Pulaski County Circuit Court order denying his petition for declaratory judgment, injunctive relief, and writ of mandamus; denying his motion for judgment on the pleadings; and granting a cross-motion for summary judgment in favor of appellees Arkansas Post-Prison Transfer Board; Lona McCastlain, in her official capacity as Chairwoman of the Arkansas Post-Prison Transfer Board; Arkansas Division of Correction; and Dexter Payne, in his official capacity as Director of the Arkansas Division of Correction. For reversal, Wright argues that (1) the circuit court erred in finding that Act

683 of 2023 (Act 683) does not apply to him; (2) the circuit court erred in finding that Act 683 does not apply retroactively; and (3) alternatively, this court should remand because the circuit court erroneously considered extrinsic evidence in reaching its conclusion. We reverse and remand the circuit court's order.

I. *Facts*

In March 2006, Wright was convicted of residential burglary and was sentenced to three years' imprisonment with an additional seven years' suspended imposition of sentence. In February 2020, Wright pleaded guilty to one count of aggravated robbery, and he was sentenced as a habitual offender pursuant to Arkansas Code Annotated section 5-4-501(b) (Supp. 2019) to twelve years' imprisonment. A notation at the bottom of his 2020 sentencing order stated that "DEFENDANT IS TO SERVE FLAT TIME."

On November 7, 2023, Wright filed a petition for declaratory relief in the Pulaski County Circuit Court seeking to have his parole-eligibility date recalculated in light of Act 683. He argued that the language of Arkansas Code Annotated section 16-93-609(b)(2)(B) (Supp. 2023), as added to the existing statute by Act 683, clarifies that a pre-2015 residential-burglary conviction is not a felony involving violence for purposes of parole eligibility unless the sentencing order for the current offense expressly states the defendant is being sentenced under that section. Wright further asserted that, based on the explicit language of Act 683, the circuit court may not look beyond the sentencing order to make this determination. Wright argued that because his sentencing order contained no designation to section 16-93-609, he was entitled to have his parole eligibility recalculated. Appellees responded that Wright was on notice that he would serve the entirety of his sentence and that the notation

2

on Wright's sentencing order, "DEFENDANT IS TO SERVE FLAT TIME," could only be a reference to section 16-93-609.

Wright then filed a motion for judgment on the pleadings in which he asserted that, pursuant to Arkansas Rule of Civil Procedure 12(c), the circuit court should resolve the "purely legal issues" based on the pleadings. In response, appellees filed a cross-motion for summary judgment, attaching Wright's institutional file and the plea colloquy from his February 2020 plea hearing. The plea colloquy contained the following:

THE COURT:     Mr. Wright, just so we're a little more clear, you are also charged as a two strike. Which means, whatever sentence you agree to, you are going to serve it day for day. Do you understand?

WRIGHT:          Yeah.

Following an April 2024 hearing, the circuit court entered a final order on May 14, 2024. It denied Wright's petition, denied his motion for judgment on the pleadings, and granted appellees' cross-motion for summary judgment. Wright filed a timely notice of appeal from that order.

II.  *Points on Appeal*

On appeal, Wright argues that the circuit court erred by finding that Act 683 did not apply to him and did not apply retroactively. In the alternative, he contends that the circuit court erred in considering extraneous evidence outside the pleadings at his April 2024 hearing on this matter.

This appeal is a companion case to *Rodgers v. Arkansas Parole Board*, 2024 Ark. 176. Like *Rodgers*, Wright raises the same argument that the circuit court erred in finding that Act 683 does not render him parole eligible. Thus, for the reasons set forth in *Rodgers* and

incorporated by reference herein, we reverse and remand to the circuit court for further proceedings.

Reversed and remanded.

WOMACK and WEBB, JJ., dissent.

**SHAWN A. WOMACK, Justice, dissenting.** Dismissal of the case is proper pursuant to article 5, section 20 of the Arkansas Constitution.[1] Indeed, absent an express constitutional provision to the contrary, the State can never properly be a defendant in any of its courts.[2] Here, Wright improperly made the State a defendant when he petitioned for mandamus, declaratory, and injunctive relief in a new civil action below, 60CV-23-8444.[3] Instead, he should have petitioned in his underlying criminal case, 60CR-19-4658. Accordingly, this court, like the circuit court below, lacks jurisdiction. For these reasons, the circuit court's order must be reversed and the case dismissed.

**BARBARA W. WEBB, Justice, dissenting.** This case concerns a simple matter of statutory interpretation. Act 683 of 2023, by its terms and as expressed in its legislative intent section, does not apply to Wright. The majority, however, employs a rote application of our rules of construction—devoid of any analysis of the measure's plain meaning or the context that led to its enactment—the result of which is a decision that finds for Wright

---

[1]*See Thurston v. League of Women Voters of Ark.*, 2022 Ark. 32, at 17, 639 S.W.3d 319, 327 (Womack, J., dissenting).

[2]*Id.*

[3]*See Perry v. Payne*, 2022 Ark. 112, at 5 (Womack, J., dissenting) (holding Article 5, section 20 required the dismissal of the appeal from denial of writ of mandamus and declaratory judgment).

despite a distortion of the law. For the reasons discussed below, Wright is not entitled to a recalculation of his parole eligibility, and the circuit court's grant of summary judgment in favor of the State should be affirmed.

Arkansas law provides that a defendant "who commits a violent felony offense or any felony sex offense subsequent to August 13, 2001," and "who has previously been found guilty of or pleaded guilty or nolo contendere to any violent felony offense or any felony sex offense shall not be eligible for release on parole by the board." Ark. Code Ann. § 16-93-609(b)(1) (Supp. 2023). A "violent felony offense or any felony sex offense" means the offenses enumerated in Ark. Code Ann. § 5-4-501(d)(2). Ark. Code Ann. § 16-93-609(b)(2).

In 2015, the General Assembly added residential burglary to the list of violent felonies. *See* Act 895 of 2015. Despite this change, the Arkansas Division of Correction (ADC) did not consider residential burglaries committed before 2015 to be violent felony offenses for the purposes of section 16-93-609. Over the next seven years, some defendants relied on the ADC's interpretation of the statute when pleading guilty to violent felony offenses, even though they had a prior residential-burglary conviction, with the understanding that they would remain eligible for parole.

In 2022, the Attorney General issued an opinion clarifying that a residential burglary committed before 2015 was considered a violent felony offense under section 16-93-609. As a result, the ADC determined that 290 inmates were no longer parole eligible and sought to return at least two inmates to ADC custody. Many of these individuals had negotiated plea agreements in reliance on the ADC's prior interpretation of the law.

In response, the General Assembly passed Act 683 of 2023. The Act's legislative-intent section stated that it "appl[ies] solely to the recalculation of parole eligibility for the *affected persons*" and that it did not "create a right to a resentencing proceeding, a new trial, other remedy, or cause of action that did not exist before the effective date of this act." Act 683 of 2023, § 1(b) (emphasis added). Act 683 added subdivision (b)(2)(B) to section 16-93-609, which states:

> Unless the sentencing order expressly designates that the defendant was sentenced under this section, "a violent felony offense or any felony sex offense" does not include residential burglary, § 5-39-201, committed before April 1, 2015, unless the defendant was sentenced on or after May 24, 2022.

In 2006, Wright pled guilty to residential burglary and was sentenced to three years' imprisonment followed by seven years' suspended imposition of sentence. On February 25, 2020, Wright entered a negotiated guilty plea to aggravated robbery, which, like residential burglary, is considered a violent felony offense under section 16-93-609. Per the agreement, Wright was offered a twelve-year sentence conditioned on Wright's ineligibility for parole. This condition was memorialized on Wright's sentencing order with the sentencing court's notation: "DEFENDANT IS TO SERVE FLAT TIME."

Following Act 683's passage, Wright filed a petition for declaratory judgment and writ of mandamus. He argued that the notation on his sentencing order that "DEFENDANT IS TO SERVE FLAT TIME" was not an "express designation" of section 16-93-609. As a result, his 2006 residential burglary could not be considered a violent felony offense for the purpose of determining his parole eligibility. Wright sought a declaration that he was parole eligible.

After the State filed its answer, Wright moved for a judgment on the pleadings. The State then moved for summary judgment. Following a hearing on the motion, the circuit court entered an order granting summary judgment and denying Wright's requested relief. The circuit court noted that there was no dispute that Wright pled guilty to residential burglary in 2006 and aggravated robbery in 2020. It further noted that when Wright pled guilty to aggravated robbery, all parties, including Wright, agreed that Wright would have to serve his entire sentence. The circuit court concluded that section 16-93-609 did not apply retroactively. It reasoned that it would be absurd to enter a sentencing order almost three years before the law changed to include the required language of Act 683. According to the circuit court, the legislative intent of Act 683 made clear that Wright was not an affected person.

Wright argues on appeal that the circuit court erred by finding that Act 683 did not apply to him. In particular, he suggests that because his sentencing order did not include a formal citation to section 16-93-609, his residential-burglary conviction cannot be considered for purposes of determining parole eligibility. We are therefore tasked with construing section 16-93-609. We review issues of statutory interpretation de novo, as it is for this court to determine what a statute means. *Harris v. Crawford Cnty. Bd. of Election Comm'rs*, 2022 Ark. 160, 651 S.W.3d 703. The primary rule of statutory interpretation is to give effect to the intent of the legislature. *Keep Our Dollars in Independence Cnty. v. Mitchell*, 2017 Ark. 154, 518 S.W.3d 64. We construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.*

Under Act 683, for a residential-burglary conviction committed before 2015 to be considered a felony involving violence, the sentencing order must "expressly designate[] that the defendant was sentenced under [Ark. Code Ann. § 16-93-609]." Act 683 of 2023, § 2. Wright was convicted of a Class Y felony and was sentenced to a term of years rather than life imprisonment. The sentencing order notes that he is to "serve flat time"—indicating that Wright is parole ineligible. This is a clear reference to section 16-93-609, as no other statute could render him parole ineligible for a term of years.[1] The sentencing order therefore makes the requisite designation that Wright was sentenced under section 16-93-609.

Fully adopting its opinion in *Rodgers v. Arkansas Parole Board*, 2024 Ark. 176, a companion case, the majority here concludes that the circuit court's notation that Wright "is to serve flat time" is not an express designation as required under Act 683 because it does not "constitute a direct citation to section 16-93-609," and it does not "clearly or unmistakably represent that [Wright] has been sentenced under that section." Incredibly, the majority acknowledges that this court does not read language into statutes not included by our legislature yet creates out of whole cloth the requirement that an "express designation" of section 16-93-609 can only be a formal citation to the statute. No such requirement exists. Even more mystifying is the majority's contention that it is unclear from the circuit court's notation that Wright had been sentenced under that section. As discussed

_____

[1]Wright suggests that the circuit court's notation could have referred to a number of statutes that limit parole, including Ark. Code Ann. §§ 5-4-501(c)(1); 5-4-501(c)(3), 5-4-501(d)(1), and 16-93-604. These statutes concern the sentencing range for habitual offenders, defendants convicted of rape or sexual assault, defendants convicted of two or more felonies involving violence, and persons who committed felonies between 1977 and 1983, respectively. These statutes are plainly inapplicable.

8

above, there is simply no other statute the circuit court could have been referencing when it noted that Wright was ineligible for parole.

What's more, the majority refuses to consider the context in which Act 683 arose, which reveals that individuals such as Wright were not the intended beneficiaries of the measure. Instead, the majority commits itself to an interpretative straitjacket, which binds it to a rigid, formulaic approach to the canons of statutory construction. For the majority, it cannot possibly consider legislative intent or a broader context surrounding the statute when it (mistakenly) determines that its plain language requires a formal citation. While the canons are useful guides for this court to follow, treating them as a constraining hierarchy can lead us to reach absurd results, as the majority did in this case.

In my view, a more holistic approach to statutory interpretation, such as the one used by Justice Alito in *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020), is more appropriate. There, the Court concluded that Title VII of the Civil Rights Act of 1964's prohibition of workplace discrimination on the basis of sex encompassed homosexuals and transgender individuals. The Court's decision was based on its view of the Act's plain language, without regard to the public's understanding of the term "sex" in 1964 or Congress's intent. While Justice Alito disagreed with the majority as to the law's plain meaning, he also considered the context surrounding the Act to reach the conclusion that there was no intent by Congress for Title VII to cover discrimination based on sexual orientation. Justice Alito explained his approach as follows:

> Thus, when textualism is properly understood, it calls for an examination of the social context in which a statute was enacted because this may have an important bearing on what its words were understood to mean at the time of enactment. Textualists do not read statutes as if they were

9

messages picked up by a powerful radio telescope from a distant and utterly unknown civilization. Statutes consist of communications between members of a particular linguistic community, one that existed in a particular place and at a particular time, and these communications must therefore be interpreted as they were understood by that community at that time.

*Bostock*, 590 U.S. at 705–06 (Alito, J., dissenting). Justice Alito further emphasized that consideration of the social and legal contexts of 1964 was necessary, "not because it provides a ground for departing from the statutory text, but because it helps to explain what the text was understood to mean when adopted." *Id.* at 717.

With Justice Alito's dissent in mind, when we consider the legal backdrop of Act 683, it reinforces the conclusion that the law was not adopted to aid individuals like Wright or punish circuit courts for their lack of prescience. The General Assembly clearly expressed its intent that Act 683 was to amend section 16-93-609 for the sole purpose of "the recalculation of parole eligibility for the *affected persons*." Act 683 of 2023, § 1(b) (emphasis added). It was widely understood that the "affected persons" the law was meant to cover were those offenders who pled guilty during a seven-year period with the understanding that their pre-2015 residential-burglary convictions would not impact their parole eligibility. *See, e.g.*, Will Langhorne, *House Committee Passes Bill Addressing Parole Eligibility Misinterpretation*, Arkansas Democrat Gazette (April 4, 2023 at 12:39 p.m.).

Wright's plea hearing establishes that he was not an affected person, as he was well aware that he would not be eligible for parole:

| | |
|---|---|
| THE COURT: | If you discussed it with him, I will go through it today. Mr. Wright, just so we're a little more clear, you are also charged as a two strike. Which means, whatever sentence you agree to, you are going to serve it day for day. Do you understand? |
| WRIGHT: | Yeah. |

The General Assembly did not enact Act 683 with the intention of providing windfalls to defendants, such as Wright, who were advised that pleading guilty would have implications for their parole eligibility.

The majority's conclusion—that Wright's sentencing order was required to include a formal citation to section 16-93-609—produces an absurd result contrary to the General Assembly's intent. It requires the sentencing court in 2020 to foresee that the law would be amended in the future to require a code citation as a condition for imposing parole ineligibility. We will not interpret a statute, even a criminal one, so as to reach an absurd conclusion that is contrary to legislative intent. *Metzner v. State*, 2015 Ark. 222, 462 S.W.3d 650. The majority's refusal to consider the legal backdrop of Act 683 is a dereliction of its duty and a rejection of common sense. It hews to its approach to statutory construction because it is simpler and easier, the irony, of course, being that it still misapprehends Act 683's plain text. Based on the foregoing, I find that the circuit court did not err in finding that Act 683 did not apply to Wright.[2]

I dissent.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Sr. Ass't Att'y Gen., for appellee.

---

[2]The result of the majority's decision is to render hundreds of career criminals parole eligible. I call upon the General Assembly to address this court's grievous mistake.